HELGA CARLEN, ET AL., PETITIONERS,* v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 37662, 37663, 37664, 37665, 42122, 42123. Promulgated May 29, 1953.

*Charles F. Osborn, Esq.*, for the petitioners.
*John H. Welch, Esq.*, for the respondent.

*Proceedings of the following petitioners are consolidated herewith : John T. Carlen ; Cathryn McKay ; Arthur R. McKay ; Arthur R. McKay and Cathryn McKay, husband and wife ; and John T. Carlen and Helga Carlen, husband and wife.

## OPINION.

TIETJENS, *Judge:* The issue for decision is whether the taxpayers may properly treat the cutting of timber under the contracts between the partnership and Neuskah and E. K. Bishop Lumber Company "as a sale or exchange of such timber" as provided in section 117 (k) (1).[1] See also section 117 (j) (1).[2] If so, they were entitled to treat their gains as capital gains.

In summary, the taxpayers' argument is that they are entitled to the benefits of 117 (k) (1) "either on the basis that [they] purchased the timber and were the owners thereof at all times (subject to the reservation of title for security purposes) or had a contract right to cut such timber and to sell the timber or logs in the normal course of taxpayers' business."

The Commissioner's position is that the contracts involved were essentially to perform services for compensation and that the partnership did not acquire any interest in the standing timber or the logs as cut which would entitle it to capital gains treatment under the subsection in question.

The question is one of first impression and we have no decided cases to serve as guide posts. Cases such as *Springfield Plywood Corporation,* 15 T. C. 697, which was concerned with section 117 (k) (2),

---

[1] SEC. 117. (k) GAIN OR LOSS IN THE CASE OF TIMBER OR COAL.—

(1) If the taxpayer so elects upon his return for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than six months prior to the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. In case such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the adjusted basis for depletion of such timber in the hands of the taxpayer and the fair market value of such timber. Such fair market value shall be the fair market value as of the first day of the taxable year in which such timber is cut, and shall thereafter be considered as the cost of such cut timber to the taxpayer for all purposes for which such cost is a necessary factor. If a taxpayer makes an election under this paragraph such election shall apply with respect to all timber which is owned by the taxpayer or which the taxpayer has a contract right to cut and shall be binding upon the taxpayer for the taxable year for which the election is made and for all subsequent years, unless the Commissioner, on showing of undue hardship, permits the taxpayer to revoke his election; such revocation, however, shall preclude any further elections under this paragraph except with the consent of the Commissioner.

[2] SEC. 117. (j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" * * * includes timber with respect to which subsection (k) (1) or (2) is applicable.

where the decisive question was whether there had been a "disposal" of timber by the owner under a contract by which the owner retained an "economic interest" in the timber, are not controlling here. Both parties agree that section 117 (k) (2) has no application to the situation before us.

We look to Regulations 111, section 29.177–8 (a), but find little help. The regulations hardly do more than follow the language of the statute.

Some assistance can be found in that part of the report of the Finance Committee of the Senate, Revenue Bill of 1943, 78th Cong., 1st Sess., Rept. No. 627, dealing with section 117 (k) (1). There the following statement appears, at page 25:

Your committee is of the opinion that various timber owners are seriously handicapped under the Federal income and excess profits tax laws. The law discriminates against taxpayers who dispose of timber by cutting it as compared with those who sell timber outright. The income realized from the cutting of timber is now taxed as ordinary income at full income and excess profits tax rates and not at capital gain rates. In short, if the taxpayer cuts his own timber he loses the benefit of the capital gain rate which applies when he sells the same timber outright to another. Similarly, owners who sell their timber on a so-called cutting contract under which the owner retains an economic interest in the property are held to have leased their property and are therefore not accorded under present law capital-gains treatment of any increase in value realized over the depletion basis.

Our attention also has been called to *Boeing* v. *United States* (Ct. Cl. 1951), 98 F. Supp. 581, where the Court of Claims in dealing with section 117 (k) (2) and not with our specific problem said:

The legislative history of 117 (k) indicates that Congress' principal purpose was to afford relief to timber owners.

These quotations do not decide the question. Nevertheless, they seem to fortify the Commissioner's position that unless the taxpayers can be considered as owners of the timber or as persons having a contract right to cut the timber for sale or for use in their own trade or business they are not entitled to claim the benefits of the section.

We do not think the taxpayers were the owners of the timber. Original ownership was in Rayonier Incorporated. Rayonier, in its contracts with Neuskah and E. K. Bishop Lumber Company, specifically sold the timber to those parties, agreeing at the same time to buy back certain species, and appropriate language indicating a sale was employed in those contracts. We do not find language importing a sale in the arrangements between the McKay and Carlen partnership and Neuskah and E. K. Bishop. The taxpayers attempt to explain this discrepancy by pointing out that the original written agreement between the partnership and Neuskah, on which the subsequent oral agreements were based, was drafted by a person unskilled in legal terminology. However that may be, it is stipulated that the partner-

ship's business was "logging timber." That term as explained in oral testimony may or may not encompass cutting timber for sale, but on this record we do not think the partnership had any timber for sale. To be sure, McKay and Carlen had a contract to cut the timber in question, but we cannot find that they owned the timber or had any proprietary interest which would permit them to sell it. All sales were made by Neuskah or E. K. Bishop Lumber Company. McKay and Carlen never had any contact with the purchasers, except insofar as E. K. Bishop invoiced itself for logs it retained. This seems simply to have been for bookkeeping purposes and did not purport to evidence a sale by the partnership to Bishop. Absolute title and control of all logs until sold and paid for remained under the contracts with Neuskah or Bishop. The taxpayers say this was for security only, but we cannot agree.

The agreement between Neuskah and the partnership is essentially a logging arrangement and the amounts payable to the partnership thereunder are said in the contract to be paid "for this service." We conclude that the essence of the arrangement was that the partnership was employed to cut timber on lands of another for compensation determined on the basis of market price of the logs and that the partnership did not own or have any proprietary interest in the timber, either before or after cutting. The statute speaks of the cutting of timber for sale by a taxpayer who has a right to cut such timber. To us this means that the taxpayer who would claim the benefit of the statute must be the one who has not only the right to cut but also the right to sell on his own account. The taxpayers here were not such persons. We agree with the Commissioner that the statutory language does not cover a taxpayer who cuts timber in which he himself has no proprietary interest which he can dispose of by sale.

Neither, in our opinion, can the petitioners qualify as taxpayers cutting the timber "for use in the taxpayer's trade or business" as required by the statute. They were loggers and were cutting timber which belonged to others and was to be used by others. The taxpayers themselves did not use the timber and they had no control over it except to cut and deliver it according to the terms of their cutting contracts with Neuskah and E. K. Bishop.

We conclude and hold that the petitioners are not entitled to the benefits of section 117 (k) (1) and approve the action of the Commissioner in this respect.

Reviewed by the Court.

*Decision will be entered under Rule 50.*