Volney L. Pinkerton and Lillian B. Pinkerton, et al.,[1] Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 61435, 61436, 61437, 61485, 61488, 61511. Filed July 29, 1957.

*James Wm. Johnston, Esq.*, for the petitioners.
*John H. Welch, Esq.*, for the respondent.

Tietjens, *Judge:* The Commissioner determined the following deficiencies in income tax and additions to tax:

|  | Taxable year | Income tax deficiencies | Additions to tax, sec. 294 (d), I. R. C. 1939 |
|---|---|---|---|
| Volney L. Pinkerton | { 1950 | $8, 809. 22 | $2, 317. 16 |
|  | 1951 | 8, 671. 52 |  |
| Earl G. Peterson | { 1950 | 8, 926. 11 |  |
|  | 1951 | 9, 063. 67 |  |
| B. Blaine Peterson | { 1950 | 8, 896. 99 |  |
|  | 1951 | 9, 163. 35 |  |
| O. R. Peterson | { 1950 | 8, 740. 19 |  |
|  | 1951 | 8, 446. 69 |  |
| John W. Harvey, III | { 1950 | 11, 348. 36 | 2, 471. 57 |
|  | 1951 | 10, 711. 95 |  |
| Estate of Craig L. Spencer, Deceased | { 1950 | 22, 183. 56 |  |
|  | 1951 | 23, 331. 43 |  |

The questions for decision are as follows: (1) Did the Commissioner properly determine that income of a partnership reported by petitioners as long-term capital gains under section 117 (j) (1) and section 117 (k) (1), constitute ordinary income; and (2) was the failure of petitioners in Docket Nos. 61435 and 61511 to file declarations of estimated tax due to reasonable cause and not to willful neglect?

FINDINGS OF FACT.

*General and Section 117 (k) (1) Issue.*

Some of the facts are stipulated and are so found.

Eagle Gorge Logging Company (hereafter called Eagle Gorge) is a partnership which was organized January 31, 1945. The following petitioners are all of the partners and the respective interests

---

[1] Proceedings of the following petitioners are consolidated herewith: Earl G. Peterson and Wyvette Peterson, Docket No. 61436; B. Blaine Peterson and J. Almeda Peterson, Docket No. 61437; O. R. Peterson and Minnie Peterson, Docket No. 61485; Estate of Craig L. Spencer, Deceased, Laura W. Spencer, Laura Spencer Harvey, and John W. Spencer, Executors, Docket No. 61488; and John W. Harvey, III, a Minor, by J. W. Harvey, As Guardian of his Property, Docket No. 61511.

have remained the same since it was organized, except for the substitution of the Estate of Craig L. Spencer for Craig L. Spencer, who died April 2, 1949, and the substitution of John W. Harvey, III, for John W. Harvey on March 31, 1945. John W. Harvey had become a member of the partnership for the benefit of his minor son, John W. Harvey, III. Their respective interests are as follows:

| | Per cent |
|---|---|
| E. (Earl) G. Peterson | 16 |
| B. B. (Blaine) Peterson | 16 |
| O. R. Peterson | 16 |
| V. (Volney) L. Pinkerton | 16 |
| John W. Harvey, III | 16 |
| Estate of Craig L. Spencer | 20 |

The partners agreed to associate in a general logging business for a period of 10 years from February 1, 1945. The capital contribution of each partner was $12,000, except that Craig L. Spencer was to contribute $15,000. Spencer was designated as general manager and vested with sole and complete authority in all matters of logging, transfers, and marketing of logs and timber products, and in the purchase and sale of timberlands, logs and forest products, equipment, and other personalty necessary and incident to the operation.

On February 1, 1947, the original agreement was revised. The partners stated that they had purchased from Buckley Logging Company certain of its timberland, logging equipment, and other personalty which were being employed in logging of the timberlands. E. G. Peterson, B. B. Peterson, and O. R. Peterson were designated to act as joint managers of all logging operations, and Craig L. Spencer was to act as sales manager. All other activities were to be managed and decided by a majority vote.

During the period of its existence Eagle Gorge has been engaged in the business of logging timber in King County, Washington, and selling the logs so produced.

During the calendar year 1950 Eagle Gorge cut timber from timberlands owned by Weyerhaeuser Timber Company, a Washington corporation, thereby producing 15,819,630 board feet of logs. During the calendar year 1951 the partnership cut timber from timberlands owned by Weyerhaeuser Timber Company thereby producing 12,719,520 board feet of logs.

All of the logs produced from the timber cut by Eagle Gorge from the Weyerhaeuser lands during the years 1950 and 1951 were sold by Eagle Gorge to Elliott Bay Mill Company and other log purchasers on the Puget Sound Log Market at the prices from time to time prevailing on the Puget Sound Log Market.

All of the timber cut by Eagle Gorge from Weyerhaeuser Timber Company lands during the years 1950 and 1951, and during all other times mentioned in these Findings of Fact, was cut from lands included in the description of the lands covered by an agreement dated

August 1, 1936, between Weyerhaeuser Timber Company and Buckley Logging Company known and designated as Weyerhaeuser Contract No. 61.

On August 1, 1936, Weyerhaeuser Timber Company, a Washington corporation, as seller (hereinafter referred to as Weyerhaeuser), and Buckley Logging Company, a Washington corporation, as buyer (hereinafter referred to as Buckley), made and entered into a certain contract being, and hereinafter referred to as, Weyerhaeuser Contract No. 61. This contract provided that Weyerhaeuser granted to Buckley the right to enter all the lands described therein and log and remove the merchantable timber thereon and to sell the logs so produced; it provided that all logs removed from said lands should be shipped to the Puget Sound waters and sold by the buyer in the Puget Sound Log Market; the buyer was required to log the timber clean and to pay for all merchantable timber not logged, or destroyed, or damaged by fire, at a certain amount per thousand board feet; it further provided that with respect to the timber logged and sold by the buyer stumpage was to be paid Weyerhaeuser on the basis of certain percentages of the average gross selling price of the logs, 25 per cent in certain cases and 20 per cent in others, with certain minor variations depending on species.

Contemporaneously with the execution of Weyerhaeuser Contract No. 61, Buckley deposited with Weyerhaeuser the sum of $75,000 as a guarantee for the faithful performance of and full compliance with the terms and conditions of the contract. This sum was to be repaid Buckley upon the completion of Buckley's obligations under the contract without default.

Thereafter, Weyerhaeuser Contract No. 61 was amended by supplemental agreement dated September 20, 1938, between Weyerhaeuser and Buckley, adding certain other timberlands. On September 30, 1939, a second supplemental agreement was made between Weyerhaeuser and Buckley pursuant to which the period within which the timber covered by Weyerhaeuser Contract No. 61 could be removed was extended from July 31, 1946, to July 31, 1951.

In the latter part of 1944 it was decided by its stockholders that Buckley Logging Company should be dissolved. The stockholders of Buckley, together with the percentage of stock held by each, were as follows:

|  | Per cent |
| --- | --- |
| Craig L. Spencer | 66⅔ |
| E. G. Peterson | 11⅑ |
| B. B. Peterson | 11⅑ |
| O. R. Peterson | 11⅑ |

On January 2, 1945, Buckley assigned Weyerhaeuser Contract No. 61 to Craig L. Spencer. This assignment was made to Spencer for the benefit of Eagle Gorge.

Eagle Gorge was organized January 31, 1945, for the purpose of continuing the logging operations formerly carried on by Buckley including the marketing and sale of logs produced.

On February 1, 1945, Craig L. Spencer entered into an agreement with Eagle Gorge. This agreement stated that Spencer individually held certain licenses from Weyerhaeuser Timber Company to log and to market the logs from certain timberlands and desired to employ the partnership for the purpose of logging said timber and marketing the logs produced, and desired "to realize his benefits from said licenses by way of profits distributable to him as a member of said partnership." The licenses referred to were Weyerhaeuser Contract No. 61. This contract then provided that Spencer employed the partnership to log the timber and market it, and that the partnership agreed to cut and remove the timber and to sell the logs produced in the Puget Sound Log Market. The contract did not provide for any payments or royalties to or for the account of Spencer other than an amount sufficient to cover stumpage to Weyerhaeuser.

On February 15, 1945, Eagle Gorge acquired directly from Buckley its logging equipment and also all of the timberlands owned outright by Buckley. The timberlands so acquired were known as the Wenke timberlands, the Galbraith timberlands, the Jones timberlands, and the J. P. Patton timberlands. These timberlands constituted small isolated patches within, or contiguous to, the area of the timberlands covered by Weyerhaeuser Contract No. 61.

On August 31, 1945, a third supplemental agreement to Weyerhaeuser Contract No. 61 was executed between Weyerhaeuser and Craig L. Spencer. The timberlands, which this supplemental agreement provided were to be transferred to Weyerhaeuser after they had been logged off, were the Wenke, Galbraith, Jones, and J. P. Patton timberlands referred to above. Weyerhaeuser desired to acquire these timberlands after they had been logged off to add to its lands as tree farms under its perpetual yield program.

On September 1, 1945, Craig L. Spencer made a written offer to Elliott Bay Mill Company, a Washington corporation, to sell and assign to Elliott Bay Mill Company all interest in the guarantee fund held by Weyerhaeuser under Weyerhaeuser Contract No. 61 for the sum of $75,000, and, as additional consideration, to give Elliott Bay Mill Company first call, at going market prices, on all logs produced under Weyerhaeuser Contract No. 61. On September 5, 1945, Spencer made the following agreement with Elliott Bay Mill Company:

In part consideration of your purchase from me for $75,000.00 of all my right to that certain Guarantee fund deposited with Weyerhaeuser Timber Company under "Weyerhaeuser Timber Company's Logging Contract No. 61", I hereby agree to give you first call, henceforth, at going market prices, on all logs produced by me from my operation under this contract. * * *

On October 1, 1945, Spencer executed a formal assignment of the guarantee fund to Elliott Bay Mill Company.

Although Spencer purported to act in his own name individually in connection with the matters referred to in the preceding paragraphs, he was in fact acting as managing partner of Eagle Gorge.

All logs produced by the logging operations of Eagle Gorge on the Weyerhaeuser lands covered by Weyerhaeuser Contract No. 61 were sold by Eagle Gorge to Elliott Bay Mill Company and other log buyers in the Puget Sound Log Market. The number of board feet of logs cut from the Weyerhaeuser lands and sold by Eagle Gorge to Elliott Bay Mill Company and other log buyers, respectively, during the 10 years from 1946 through 1955, were as follows:

| Year | Number of board feet sold to Elliott Bay Mill Company | Number of board feet sold to other log buyers |
|------|------|------|
| 1946 | 21,000,000 | |
| 1947 | 2,900,000 | |
| 1948 | 2,206,000 | 1,412,000 |
| 1949 | 14,800,000 | 4,397,000 |
| 1950 | 13,512,000 | 2,306,000 |
| 1951 | 9,500,000 | 3,040,000 |
| 1952 | 5,800,000 | 11,500,000 |
| 1953 | 2,700,000 | 6,100,000 |
| 1954 | 1,307,000 | 7,700,000 |
| 1955 | 1,106,000 | 7,512,000 |

All logs from Weyerhaeuser lands cut and sold by Eagle Gorge as stated in the preceding paragraph were sold at the market price from time to time prevailing on the Puget Sound Log Market, and Eagle Gorge received the full purchase price therefor from the respective buyers, including Elliott Bay Mill Company.

All proceeds from the sale of logs cut by Eagle Gorge from the Weyerhaeuser lands have been retained by Eagle Gorge for its own account; and after payment of the expenses of its operations and the stumpage due Weyerhaeuser, the balance of the proceeds has at all times been credited to the individual accounts of the partners in accordance with their respective partnership interests. No sums were ever paid to Spencer or to his estate other than his or its partnership share of the partnership earnings. No portion of said sales proceeds has ever been paid to or claimed by Elliott Bay Mill Company.

Neither Craig L. Spencer, the Estate of Craig L. Spencer, nor Elliott Bay Mill Company has ever questioned the right of Eagle Gorge to sell the logs produced from the Weyerhaeuser lands for its own account and to retain the proceeds for its own account.

During the entire period of its operations Eagle Gorge caused all logs which it cut from the Weyerhaeuser timberlands to be scaled by Puget Sound Log Scaling and Grading Bureau as required by Weyerhaeuser Contract No. 61. Each scale bill covered one complete

raft of logs. Some rafts included only logs cut from the Weyerhaeuser lands. Others included both logs from Weyerhaeuser lands and logs from lands owned outright by Eagle Gorge. All scale bills, in each instance, designated Eagle Gorge as owner of the logs.

With respect to all logs cut by Eagle Gorge from the Weyerhaeuser lands and sold as stated above, Eagle Gorge issued and delivered invoices to the respective purchasers. Some of these invoices covered only logs cut from the Weyerhaeuser lands; others included both logs .from Weyerhaeuser lands and logs from lands owned outright by Eagle Gorge. Each such invoice designated the party to whom such logs were sold.

During the entire period of its operations Eagle Gorge issued and delivered to Weyerhaeuser stumpage reports covering all logs cut and sold by Eagle Gorge from the Weyerhaeuser lands under Weyerhaeuser Contract No. 61. Each such stumpage report showed the raft number covered, the species of logs, the price at which the logs were sold, and the calculation of the amount of stumpage due Weyerhaeuser thereon.

Payment of stumpage due Weyerhaeuser under Weyerhaeuser Contract No. 61 for all logs cut by Eagle Gorge during the entire period of its operation was made direct to Weyerhaeuser by Eagle Gorge checks from time to time issued and delivered to Weyerhaeuser by Eagle Gorge.

Copies of all scale bills issued as above stated which included logs cut by Eagle Gorge from Weyerhaeuser lands, together with all invoices above referred to covering the sale of such logs, were delivered to Weyerhaeuser along with said stumpage reports, and have been retained by Weyerhaeuser in its files and records at its principal office in Tacoma, Washington.

During the period 1946 through 1955 any logs cut by Eagle Gorge from the Weyerhaeuser timberlands which were on hand in the booming grounds in Tacoma, Pierce County, Washington, on the first day of January of any year, and were not yet disposed of, were reported by Eagle Gorge to the county assessor of Pierce County, Washington, as the property of Eagle Gorge for the purpose of ad valorem personal property taxes thereon. Ad valorem personal property taxes were assessed by said county assessor on all logs so reported by Eagle Gorge and the personal property taxes so assessed for each such year were paid by Eagle Gorge.

In its partnership income tax returns for the years 1950 and 1951 there were included under the item "Inventory at Beginning of Year" all logs felled and bucked by Eagle Gorge on the Weyerhaeuser lands and not yet removed from the woods at the beginning of the year. Similarly there were included under the item "Inventory at end of year" all logs felled and bucked by Eagle Gorge on the Weyer-

haeuser lands but not yet removed from the woods at the end of the year.

During the 10-year period from 1946 through 1955 all real estate taxes on the Weyerhaeuser timberlands and timber and all fire protection and fire patrol fees and expenses imposed upon the buyer under Weyerhaeuser Contract No. 61 were paid by Eagle Gorge.

During the period of its operations on the Weyerhaeuser timberlands Eagle Gorge paid Weyerhaeuser all sums falling due under Weyerhaeuser Contract No. 61 for merchantable timber not logged and merchantable timber destroyed or damaged by fire.

Eagle Gorge duly elected on its partnership income tax returns for the taxable years 1950 and 1951 and prior years to claim the benefit of section 117 (k) (1) of the Internal Revenue Code of 1939.

### Section 294 (d) Issue.

The petitioner Volney L. Pinkerton and the petitioner John W. Harvey, III, through his guardian, John W. Harvey, were advised by the certified public accountant who took care of their tax returns that due to the fact that the income of the partnership Eagle Gorge was difficult to ascertain prior to the end of its taxable year, it was not necessary to file a declaration of income during the year 1950, if by January 15 of the following year an amount equivalent to at least 80 per cent of their income tax was paid. Each of these petitioners, relying on that advice, filed an estimated tax return on or before January 15, 1951, and paid an amount equal to 80 per cent or more of the tax so estimated. In each case the payment so made was more than 80 per cent of the income tax liability disclosed by the final return filed by these petitioners for said year.

Petitioners Volney L. Pinkerton and Lillian B. Pinkerton, his wife (Docket No. 61435), filed a joint declaration of estimated tax for the taxable year 1950 with the collector of internal revenue for the district of Washington on January 15, 1951. They estimated their income tax liability to be $18,241.70. No prior declaration for that year was filed. Volney was aware of the requirements of the law respecting declarations of estimated income tax.

John W. Harvey, as guardian of the Estate of John W. Harvey, III, a minor (Docket No. 61511), filed a declaration of estimated tax for the taxable year 1950 with the collector of internal revenue for the district of Washington on January 15, 1951. The income tax liability of this taxpayer was estimated to be $20,000. No prior declaration for that year was filed. John was aware of the requirements of the law respecting declarations.

Petitioners in Docket Nos. 61435 and 61511 have not shown or established that their respective failures to file timely declarations of estimated tax for the taxable year 1950 were due to reasonable cause and not willful neglect.

## OPINION.

On the principal issue, i. e., that involving section 117 (k) (1), both parties are in apparent agreement that this case is governed by the principles established in *Helga Carlen*, 20 T. C. 573, 578, affd. (C. A. 9) 220 F. 2d 338. There we said with reference to section 117 (k) (1), that—

The statute speaks of the cutting of timber for sale by a taxpayer who has a right to cut such timber. To us this means that the taxpayer who would claim the benefit of the statute must be the one who has not only the right to cut *but also the right to sell on his own account.* [Emphasis supplied.]

The facts as we have found them dispose of the issue in favor of the petitioners. Eagle Gorge not only had the right to cut timber under the Weyerhaeuser contract, but also had the right to sell the timber on its own account. Despite the equivocal language used in some of the written instruments incident to the transactions involved we think that the tenor of the dealings between Spencer, Eagle Gorge, and Weyerhaeuser over almost a 10-year period is convincing evidence that Eagle Gorge had rights in the timber such as entitled the partnership to the benefits of section 117 (k) (1). In practical effect, Eagle Gorge stepped into the shoes of Buckley with respect to the Weyerhaeuser contract, and we think that whatever Spencer did ostensibly for himself with reference to that contract was in fact done for Eagle Gorge. Since that is our conclusion after consideration of the whole record, Eagle Gorge not only had the right to cut the timber covered by the Weyerhaeuser contract, but also the right to sell on its own account. We hold that petitioners are entitled to claim the benefits of section 117 (k) (1) and report their gains as capital gains.

On the second issue, the additions to tax for failure to file timely declarations of estimated tax in Docket Nos. 61435 and 61511, the record is such that it fails to establish that the failures to file were due to reasonable cause. The Commissioner's brief accurately summarizes the situation and we see no need to make further comment. We quote the brief as follows:

Volney L. Pinkerton and his wife filed a declaration of estimated tax on January 15, 1951 in which they estimated their 1950 income tax liability to be $18,241.70. They did not file a declaration on or before March 15, 1950 or at any other time during 1950.

John W. Harvey filed a declaration of estimated tax on January 15, 1951 on behalf of John W. Harvey, III, in which he estimated the 1950 income tax liability of his son to be $20,000.00. No other declaration was filed or payment made for 1950.

Mr. Pinkerton testified that his accountants advised him that he was merely required to pay 80 percent of the tax by January 15, 1951 in order to satisfy the requirements of the law. He further testified that he understood it to be common practice in cases where the income was not sufficiently determinable to make a declaration. (Tr. 53).

John W. Harvey testified that he had read the regulations and was assured by a firm of tax accountants that his method of filing was in accordance with the way that the Bureau of Internal Revenue was interpreting the regulations locally. (Tr. 91). No testimony by any member of the accounting firm was presented. In similar circumstances, where an accountant did not testify and the taxpayers attempted to excuse their failure to file by stating that they relied upon a rumor, the Tax Court held that reliance upon a rumor that the Commissioner would not enforce the law amounts to willful neglect. *Howard M. Fischer, et al.* (1955) 25 T. C. 102.

Mr. Harvey further testified that it was not possible to know what the income of Eagle Gorge would be, but he stated that the logging activity is normally completed prior to the first of December in each year. (Tr. 92). It is apparent that the logging season was completed well before the end of the year and logging operations had been in progress since April. In any event the Court in the case of *John Adrian Cooper* (1956) 25 T. C. 894 denied this excuse as constituting reasonable cause, stating:

\* \* \* petitioner's contention that he did not know until the end of 1950 whether he had earned any income does not demonstrate 'reasonable cause' for failure to file a declaration that is mandatory by law. \* \* \*

It has been held not to be sufficient excuse to state that reliance is placed upon an accountant, where the record fails to show the competency of such advisor. *Rene R. Bouche* (1952) 18 T. C. 144. There is nothing in the instant record, other than the testimony of the petitioners concerning their reliance on an unnamed accounting firm, which indicates the qualifications or competency of the taxpayers' advisors.

*Decisions will be entered under Rule 50.*