W. H. Neil v. Commissioner. W. H. Neil and Aileen W. Neil v. Commissioner.
Neil v. Commissioner
Docket Nos. 57806, 64845, 64846.
United States Tax Court
T.C. Memo 1958-88; 1958 Tax Ct. Memo LEXIS 142; 17 T.C.M. (CCH) 429; T.C.M. (RIA) 58088; May 16, 1958
*142 Family partnership. - Petitioner's interest in a partnership originated in a loan from his father which he repaid from first profits of the partnership. The petitioner's sisters contributed no capital to the partnership and neither they nor the petitioner rendered any services to the partnership. Held, that the sisters were not partners nor sub-partners, and that the petitioner did not hold his partnership interest in trust for his sisters. Interest income. - Under agreement whereby petitioner's income from the partnership was to be divided with his sisters and they were to share in investments of such income, interest received on loans made out of such partnership income is the income of the petitioner and the sisters in equal shares. Statute of limitations. - The part of the petitioner's distributive share of partnership income omitted from his return for 1949 was more than 25 percent of the income reported. Held, that deficiency notice mailed within 5 years after the due date of the return was timely. Additions to tax. - Additions under 1939 Code sections 294(d)(1)(A) and 294(d)(2) held proper where no declarations of estimated tax were filed and no reasonable cause shown for *143 non-filing. R. B. Cannon, Esq., Fort Worth National Bank Building, Fort Worth, Tex., for the petitioners. Paul M. Newton, Esq., for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax and additions thereto for the years and in the amounts as follows: Additions under
I.R.C. of 1939
Sec. 294
Sec. 294
Year
Deficiency
(d)(1)(A)
(d)(2)
1949
$ 9,683.63
1950
12,863.57
$1,443.96
$ 962.63
1951
18,242.63
2,126.81
1,417.88
1952
29,889.62
3,631.32
2,420.87
1953
18,942.46
1,892.47 The principal issue in all years is whether there is includible in W. H. Neil's income all the income from the partnership interest standing in his name or whether such income is taxable one-third to him and each of his two sisters. Another issue is whether the petitioner is taxable upon all the interest on notes of his father. Other issues concern the statute of limitations as to the year 1949, and additions made by the respondent for failure to file declarations of estimated tax and underestimations of estimated tax. Findings of Fact The petitioners, husband and wife, are individuals who reside in Fort Worth, Texas. The individual income tax returns of the petitioner *144 W. H. Neil for the years 1949 through 1952, and the joint return of the two petitioners for the year 1953, were filed with the collector or director of internal revenue at Dallas. W. H. Neil will herein be called the petitioner. Early in 1946 the petitioner was in his second year of medical school at Galveston. His father, J. R. Neil, was employed by the Container Corporation of America plant at Fort Worth. During a vacation period between semesters at the medical school, which the petitioner spent at Fort Worth, J. R. Neil inquired of the petitioner whether he would be interested in going into a deal with O. P. Leonard to lease trucks to the Container Corporation. J. R. Neil and Leonard were personal friends. The petitioner expressed interest, but had no funds to finance such a deal. J. R. Neil offered to loan the petitioner the necessary funds and did loan him the sum of $5,000. No note or other evidence of indebtedness was given by the petitioner to cover the loan. On or about March 16, 1946, the petitioner and O. P. Leonard entered into an agreement concerning the leasing of automotive equipment and rolling stock to Container Corporation. In the opening paragraph of the agreement *145 Leonard is described as "Guardian of" his four named minor children. In other portions of the agreement Leonard is described as "O. P. Leonard, Trustee." The agreement authorized "Leonard, Trustee" to execute an attached lease, "to purchase all equipment * * * and to have exclusive charge and control of all matters necessary and proper" for carrying out the lease contract. The agreement required Leonard to keep records, one-half of the costs and expenses were to be charged to each of the signatories, any profit which might be realized was to be divided equally between them and to be distributed annually, and all property purchased was to be owned equally by them. The agreement was signed by O. P. Leonard as "Guardian of" his four named children, and by William H. Neil without any designation of capacity. On March 19, 1946, a lease agreement was entered into between Leonard and Container Corporation whereby a truck, tractors, and semi-trailers were leased to Container Corporation for a four-year period, with an option in the lessee to purchase on specified dates and conditions. Leonard was described in the lease as "O. P. Leonard, Trustee." On March 16, 1946, the petitioner's father, *146 J. R. Neil, addressed and delivered a letter to O. P. Leonard, "Guardian of" Leonard's four named minor children, wherein J. R. Neil expressed himself as being familiar with the terms of the agreement between Leonard and the petitioner, and stated that "I personally will guarantee the payment of all the expenses and cost and the performance of all obligations assumed by my son under said agreement should he for any reason fail or refuse to pay or perform such." At the time the above-mentioned documents were written, in March 1946, the petitioner was 22 years old. He had two sisters who were minors. One of them, Maryanne, was 20 years old; the other, Nancy, was in her 15th year. Neither sister was mentioned in any of the above documents. At the time that the petitioner entered into the agreement with Leonard neither the petitioner nor his sisters had had any experience in the operation of any businesses. From 1946 until some time in 1952, the petitioner was away from his home in Fort Worth except for week-ends or other short periods. Some of his time was spent in medical school, some serving an internship, and two years in the United States Navy. During that period and through 1953 *147 O. P. Leonard operated the truck leasing business, herein sometimes called the Leonard partnership. For each of the years 1946 through 1953, Leonard filed Federal partnership returns of income under the caption of "O. P. Leonard, Trustee, Truck Account." Each of those returns listed the partners as being the petitioner and the four children of Leonard. Each of the returns showed the petitioner's distributive share of partnership income to be one-half thereof. The other one-half was shown as the share of Leonard's four children in equal parts. The amounts of the petitioner's distributive share of the Leonard partnership income as shown on its returns, and the amounts reported as gross income from that partnership in the petitioner's returns were as follows for the years 1946, 1947, and 1948: Partnership
Petitioner's
Year
Returns
Returns
1946
$ 3,723.12
$ 3,232.12
1947
8,242.18
8,242.18
1948
16,077.96
16,077.96
Late in 1948 the petitioner became concerned about the amount of tax that he was paying on the income from the Leonard partnership. He and his father consulted an attorney who prepared the following instrument which was dated January 1, 1949, and which was signed by the petitioner and his sisters: *148 "This agreement is made by and between WILLIAM HENRY NEIL, MARY ANNE NEIL and NANCY CLAIRE NEIL. "William Henry Neil is interested in a certain motor truck rental business with O. P. Leonard, which business is conducted under the general name and style of O. P. Leonard, Trustee. William Henry Neil's original investment and association with O. P. Leonard arose from funds supplied to William Henry Neil by J. R. Neil of Fort Worth, Texas, father of the three signatories to this agreement, and which said funds were made available as a loan to William Henry Neil with the understanding by and between William Henry Neil and J. R. Neil that William Henry Neil would treat said business operation as an equal partnership between himself and the other signatories to this agreement so that from and after January 1, 1949, all net sums received by William Henry Neil should be divided into three equal parts and paid to the three signatories to this agreement. Provided, however, that it is expressly understood and agreed that William Henry Neil is authorized to make investments for and in behalf of the other signatories to this agreement, so long as proper books and records are kept showing the interests *149 and amounts due the respective signatories to this agreement, and each of said signatories shall have the right to demand and receive from William Henry Neil a partition of such invested funds at any time that the signatory so demands, after attaining the age of 21 years. In connection with such investments the parties agree that William Henry Neil shall not be liable for errors or losses arising from such investments, but is fully authorized to make any character of investments, prudent or otherwise, as he deems advisable, subject only to his obligation and duty to fully account to the other signatories to the agreement for their interests therein." For the years 1949 through 1953 partnership returns of income were filed bearing the name of "W. H. Neil Et Al." in which the partners were listed as being the petitioner and his two sisters, Mary (or Maryanne) and Nancy. In the returns there were included in gross income the amounts shown on the Leonard partnership returns as the petitioner's distributive share of the income of that partnership. Such amounts were as follows: 1949
$29,993.49
1950
36,660.03
1951
36,920.41
1952
51,223.36
1953
41,379.85 The Neil, et al. partnership return for 1951 *150 also showed gross income of $4,430 from dividends,[1] and the return for 1952 showed interest income in the amount of $9,850. The individual returns of the petitioner for each of the years 1946 through 1951, and the partnership returns of W. H. Neil, et al. for the years 1949 through 1951 were prepared by A. S. Headley of Fort Worth, who is not otherwise identified in the record. The petitioner signed returns that were sent to him by Headley and sent in checks in payment of the amounts of taxes shown thereon. Headley did not advise the petitioner to file declarations of estimated tax. In 1952 the petitioner became aware of the fact that declarations of his estimated tax had not been prepared by Headley and that no such declarations had been filed by or for him. He thereupon engaged the servives of an accounting firm. A representative of that firm prepared the returns of the petitioner, of W. H. Neil, et al., and of the petitioner's sisters for the years 1952 and 1953 from information furnished to him and without verification thereof. Prior to 1952 no records had been kept by or *151 for the petitioner with respect to his financial transactions. The accounting firm engaged by the petitioner in 1952 set up accounts retroactively to 1946 which reflected his financial transactions with the Leonard partnership. Neither the petitioner nor his sisters took any part in the management or operations of the truck rental business. All of the affairs of that business were handled by O. P. Leonard. After the petitioner entered into the Leonard partnership arrangement, he also entered into an oral arrangement with his father to loan his father the proceeds from the partnership against the father's interest bearing notes. The petitioner received his first distribution from the Leonard partnership in 1948. In that year he repaid to his father the sum of $5,000 that he had borrowed in 1946 to invest in the Leonard partnership. In that year he also loaned his father the sum of $4,000. Thereafter, through the year 1953 the petitioner received distributions from the Leonard partnership, and through the years 1948 to 1952 he made loans of substantial portions thereof to his father. The distributions received by the petitioner to the end of the year 1952 were as follows: March 1948
$ 4,000.00
November 1948
5,000.00
March 1949
5,000.00
July 1949
8,000.00
September 1949
6,500.00
December 1949
6,500.00
January 1950
7,500.00
April 1950
7,500.00
June 1950
7,500.00
September 1950
10,000.00
December 1950
10,000.00
March 1951
9,000.00
May 1951
6,000.00
June 1951
4,000.00
September 1951
10,000.00
November 1951
5,000.00
January 1952
8,000.00
March 1952
8,000.00
May 1952
8,000.00
July 1952
10,000.00
October 1952
15,000.00
December 1952
8,000.00
TOTAL
$168,500.00
*152 The amounts received by the petitioner from the Leonard partnership in 1948 to 1952, inclusive, were disbursed by him as follows: (1) Repayment in 1948 of initial
loan from J. R. Neil
$ 5,000.00
(2) Loans to J. R. Neil: March 1948
$ 4,000.00
March 1949
5,000.00
July 1949
5,000.00
September 1949
2,500.00
November 1949
6,500.00
December 1949
6,500.00
January 1950
7,000.00
April 1950
7,500.00
September 1950
7,500.00
October 1950
10,000.00
November 1950
10,000.00
May 1951
6,000.00
June 1951
4,000.00
September 1951
10,000.00
December 1951
5,000.00
January 1952
8,000.00
May 1952
8,000.00
October 1952
15,000.00
December 1952
8,000.00
December 1952
8,000.00
143,500.00
(3) Federal Income Taxes: March 1951 W. H.
Neil
$3,180.26
March 1951 Nancy
Neil
2,600.80
March 1951 Mary-
anne Neil
2,604.37
March 1952 W. H.
Neil
5,469.71
March 1952 Nancy
Neil
2,554.89
March 1952 Mary-
anne Neil
2,623.09
19,033.12
Total Disbursed
$167,533.12
On hand, December 31, 1952
966.88
Total Distributions Received
$168,500.00
Each of the above loans made by the petitioner to J. R. Neil was evidenced by a promissory note payable to the order of the petitioner with interest at 5 percent. The funds so borrowed by J. R. Neil from the petitioner were used by J. R. Neil in engaging in oil ventures *153 and the purchase of ranches. His investments and purchases were made in his own name. For the years 1949 to 1953, inclusive, the petitioner and each of his sisters, Maryanne and Nancy Neil, reported in his or her income tax return the receipt of partnership income in the following amounts: 1949
$ 9,997.83
1950
12,220.01
1951
13,783.47
1952
20,357.79
1953
14,832.91 For the year 1953 the sisters each reported the receipt of $1,700 interest from J. R. Neil, and the petitioner reported $2,700 of interest from that source. Capital accounts for Maryanne and Nancy were first entered in the accounts of the petitioner by entries dated January 1949. At that time $14,427.44 was charged to the petitioner's capital account and $7,213.72 was credited to each of his sisters. The entries were described as "1/3 distribution of Joint Venture to W. H. Neil, Nancy Neil, & Mary Ann Neil." By other journal entries dated December of each of the years 1949, 1950, 1951, and 1952 charges were made on the petitioner's records to "Investment a/c" and credits were made to the petitioner and to each of his sisters of one-third of the amount charged to the investment account. The amounts so charged and credited are the same *154 amounts (with a slight difference for 1951) as the amounts shown as income in the partnership returns filed by W. H. Neil, et al. No entries are in evidence for the year 1953. The income taxes shown on the returns of Maryanne and Nancy Neil were paid either by J. R. Neil or by the petitioner. The amount of $1,823.90 shown on the return of each of the sisters for 1949 was paid by J. R. Neil and those sums were credited to J. R. Neil's loan account on the records that were subsequently set up for the petitioner. In March 1950, J. R. Neil paid an additional amount of $1,000 on account of the income tax of each of the petitioner's sisters and the sum of $2,000 was credited to his loan account. In March 1951 and 1952, the petitioner paid on account of the 1950 and 1951 income taxes of Maryanne and Nancy the following amounts: Maryanne
Nancy
1951
$2,604.31
$2,600.80
1952
2,623.09
2,554.89 The amounts of $1,823.90 and $1,000 paid by J. R. Neil on account of the income taxes of each of the petitioner's sisters were charged to their capital accounts on the records of the petitioner. For each of the years 1949 through 1953 the respondent determined that the full amount of the petitioner's distributive *155 share of the income of O. P. Leonard, Trustee, Truck Account was includible in his income. He also determined for the years 1951, 1952, and 1953 that all interest paid by J. R. Neil, including the $1,700 reported by each of the sisters for 1953, was income of the petitioner. The petitioner's sisters did not make any contributions of capital or services to the O. P. Leonard, Trustee, Truck Account, and they had no interest therein. The petitioner and his sisters did not in good faith and acting with a business purpose join together in the conduct of any business enterprise prior to or during the taxable years. The income tax return of the petitioner for the calendar year 1949 was filed with the collector on January 13, 1950. The petitioner's distributive share of the income of O. P. Leonard, Trustee, Truck Account, for the year 1949 was not less than $29,993.49. The gross income reported by the petitioner in his income tax return for the year 1949 was in the amount of $11,001.98. The notice of deficiency with respect to the year 1949 was mailed by the respondent on March 7, 1955. The petitioner omitted from gross income for the year 1949 an amount properly includible therein which was *156 in excess of 25 percent of the amount of gross income stated in the return. For each of the years 1950 through 1953 the respondent determined additions to the petitioner's tax under the provisions of section 294(d)(1)(A) of the Internal Revenue Code of 1939. For each of those years the petitioner failed to file a declaration of estimated tax. Such failure was not due to reasonable cause. For each of the years 1950, 1951, and 1952 the respondent determined additions to the petitioner's tax under the provisions of section 294(d)(2) of the Internal Revenue Code of 1939. For each of the years, 80 percent of the tax exceeded the amount of the estimated tax. Opinion The petitioner alleges that the respondent erred in including in his income the full amount of a one-half interest in the income of the Leonard partnership, and the full amount of interest on the notes executed by the petitioner's father, J. R. Neil. The petitioner contends that from the inception of the Leonard partnership each of his sisters was a full participant in such enterprise to the extent of a one-sixth interest, which interest was carried of record in the name of the petitioner. Alternatively, the petitioner contends *157 that a one-half undivided interest in the Leonard partnership beginning in 1946 was beneficially owned in equal shares by him and his two sisters by virtue of either an expressed oral trust of which he was trustee, or the creation of a sub-partnership composed of himself and his sisters. The returns of the petitioner and his sisters were based upon the sub-partnership theory. In support of the partnership theory, it is claimed that the contribution of each of the sisters consisted of cash and personal credit advanced on their behalf by their father. Basically, a partnership is created "when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is a community of interest in the profits and losses." Commissioner v. Tower, 327 U.S. 280, quoted in Commissioner v. Culbertson, 337 U.S. 733. It was further held in the Culbertson case that persons who contribute neither capital nor service cannot be included in the statutory description of "Individuals carrying on business in partnership," for to do so "would violate the first principle of income taxation: that income must be taxed to him who earns it." The *158 petitioner's sisters rendered no services whatever to the truck leasing business. In fact, the sisters, and also the petitioner, were away from Fort Worth during the greater part of the taxable years. All of the affairs of that venture, according to the petitioner's testimony, were handled by O. P. Leonard. We recognize, of course, that under the teaching of the Culbertson case, supra, [there is] the possibility that the donee of an intrafamily gift may become a partner through the investment of such gift capital in the partnership. Here the sisters were not the recipients of any gift which could be used as capital contributed to the partnership.all of the capital of the venture that originated with any of the Neils was the $5,000 sum paid in by the petitioner in 1946 and which he had obtained as a loan from his father. We think the evidence shows that that loan was made solely to the petitioner. The petitioner himself testified that he was to be responsible for paying the money back and he did in fact pay it back out of the first distribution of profits of the business. It is true that the petitioner testified that when his father loaned him the money his father stated, and it was *159 agreed, that he and his sisters were to share jointly in the venture. However, the character of the transaction and the intention of the parties must be determined not only from the testimony of the petitioner, but from all the evidence, including the conduct of the parties. The statement of an interested party is not necessarily conclusive. Helvering v. National Grocery Co., 304 U.S. 282, affirming 35 B.T.A. 163. As we stated in R. L. Blaffer & Co., 37 B.T.A. 851, affirmed (C.A. 5), 103 Fed. (2d) 487, cert. denied 308 U.S. 576, "To be skeptical of the weight to be accorded an interested witness' statement in view of other evidence is not the same as wholly to reject the statement as if it were dishonest." We do not doubt that there was some intent and understanding that the petitioner's two sisters were to derive some benefit from this enterprise, provided it turned out to be successful. But this is not to say that they became partners. The sisters were in no way mentioned in the agreement with Leonard. There was quite apparently no obligation on their part to share in losses. Furthermore, the distributive share of some $16,000 of income for the year 1948 was treated by the *160 petitioner as his own income in his return, and $5,000 thereof was used to pay his personal debt to his father. Nor do we think that the execution of the January 1, 1949, instrument was effective to make the sisters partners in the Leonard partnership or members of a sub-partnership with their brother. That agreement recites that the original funds were made available as a loan to the petitioner with the understanding that the petitioner "would treat said business operation as an equal partnership between himself and the other signatories to this agreement so that from and after January 1, 1949, all net sums received by William Henry Neil should be divided into three equal parts and paid to the three signatories to this agreement." As we read this instrument, it does not purport to make the sisters members of any partnership. It merely provides that "all net sums" received by the petitioner shall be divided equally between the petitioner and his sisters. We incline to the belief that the language used was intended to mean that after January 1, 1949, the sisters were to share in the petitioner's distributive share of the income of the Leonard partnership. But even if it be construed *161 as broad enough to cover any distribution after January 1, 1949, the use of the term "net" must be given effect, and we think it means that the sum in which the sisters would share is the net sum, after deduction of any capital invested by the petitioner and after payment of any liability he had incurred as a partner. Accordingly, we do not construe this contract as vesting in the sisters any interest in the capital invested in the partnership. Thus, even under this agreement, the sisters may not be considered as partners since they did not have any capital invested in the venture. Case cited by the petitioner are not helpful to his position because of the factual differences. In Rupple v. Kuhl (C.A. 7), 177 Fed. (2d) 823, the court held that the taxpayer's wife was a joint venturer with the taxpayer with respect to his interest in a partnership. In that case the capital contributed by the husband to the partnership was obtained by a bank loan on a note signed by both the taxpayer and his wife which was secured by a pledge of the wife's individual property. In United States v. Atkins (C.A. 5), 191 Fed. (2d) 146, setting aside 189 Fed. (2d) 414, rehearing denied 191 Fed. (2d) 951, *162 it was held that the taxpayer and his son were partners with respect to the taxpayer's interest in other partnerships. In that case the son paid in substantial cash and property of his own as his contribution to the partnership between himself and his father, the partnership agreement was recorded in the public records, and a partnership bank account was opened from which either could make withdrawals. The facts in the cited cases distinguish them from the situation before us in these proceedings. What we have said above goes far towards disposing of the petitioner's argument that he held the partnership interest in trust for the benefit of himself and his sisters. The father, J. R. Neil, obviously placed nothing in any trust. He made a loan to the petitioner which was repaid by the petitioner. The petitioner's agreement with Leonard makes no mention of any trusteeship on the part of the petitioner, although Leonard's fiduciary capacity with respect to his own children is clearly set forth. J. R. Neil's letter to Leonard at the inception of the leasing venture does not indicate that the petitioner was acting in a fiduciary capacity; yet here again Leonard's fiduciary status is mentioned. *163 The partnership returns filed by Leonard make no mention of the petitioner as trustee; distributions were made to the petitioner by checks which, as far as the record shows, were drawn to his personal order. The notes given by J. R. Neil to the petitioner over the years beginning with March 1948, were made out to the petitioner's order without any descriptive or qualifying phraseology to indicate that they were other than his personal property. One of the petitioner's arguments is that the instrument of January 1, 1949, was the reduction to writing of a previously existing express oral trust, that such trust, when declared in writing, was one for the benefit of the three signers, and that under section 167(a)(1) of the Code a ratable share of the trust income was annually taxable to each of the three signers. The principal weakness of this argument is that there is no basis in the evidence for the view that there was an oral trust for the benefit of the petitioner's sisters when the truck leasing operation was started. As we have above pointed out, the evidence indicates that the petitioner made his initial investment solely for his own benefit and at all times until 1949 treated it *164 as his own. To sustain his claim of trusteeship for his sisters, the petitioner cites Texas cases for the proposition that where money is delivered by one person to another for a specific purpose, such as leaving money by one with another to be deposited in a bank or placed at interest, or to pay the indebtedness of the former to a third party, the person accepting the money becomes a trustee, and such a transaction creates a trust. Allen v. Pollard, 109 Tex. 536, 212 S.W. 468, Sharon Grain Co. v. Farmers' Nat. Bank, 277 S.W. 449. We have no doubt that such is the rule in Texas, and the respondent accepts it as such. The respondent points out, however, that here there was no mere "delivery" but a loan which created a debtor-creditor relationship rather than that of grantor-trustee. This distinction is referred to in the cited case of Allen v. Pollard, supra.We think it must be made here. The original transaction between the petitioner and his father is described by the petitioner and his father is described by the petitioner as a loan, and the evidence shows beyond doubt that both parties to the transaction so regarded and treated it. Nor do we consider that the instrument of *165 January 1, 1949, was sufficient to place his Leonard partnership interest in trust for the benefit of himself and his sisters. Such instrument does not use any of the ordinary language of trusts. Furthermore, as stated above, the language of the instrument is not sufficient to transfer to the sisters any interest in the petitioner's investment in the partnership. It merely provides for the division of "all net sums received" by the petitioner after January 1, 1949. As stated, we think the use of the term "net" contemplates the amount received over and above the petitioner's capital investment (which would include any previous income which had been retained in the partnership) and after payment of any liabilities which the petitioner may have incurred as a partner. The provisions of the agreement authorizing the petitioner to make investments for his sisters and entitling the sisters to a partition of "such invested funds" would appear to relate only to the "net sums received" by the petitioner from his capital investment rather than to convey to the sisters any interest in the capital investment itself. Upon careful consideration of all of the evidence, we can find no basis, under *166 either the partnership or trust provisions of the Code, for treating as income of the petitioner's sisters any part of the income derived by him from his investment in the truck leasing business. It is our opinion that, insofar as the agreement of January 1, 1949 deals with the income from the Leonard partnership, it was no more than an anticipatory assignment by the petitioner of his income from that venture. Such an assignment is, of course, not effective to shift the tax from the petitioner on the income attributable to his interest in the leasing venture. Lucas v. Earl, 281 U.S. 111, Burnet v. Leininger, 285 U.S. 136. What we have said so far relates to the question of the taxability of the income from the Leonard partnership and the so-called W. H. Neil, et al. partnership. A different situation exists as to the taxability of the interest on the notes of the petitioner's father. We have no doubt that under the agreement of January 1, 1949, the sisters did obtain a beneficial interest in "all net sums" received by the petitioner from the Leonard partnership on and after that date, but only after ownership of such net sums had reposed momentarily in the petitioner. That contract *167 provided that the petitioner should make investments of the sisters' shares on their behalf and keep records of such interests, and it is further provided that each of the sisters should have the right to demand a partition at any time, on demand, after attaining the age of 21 years. We accordingly conclude that each of the sisters beneficially owned a one-third interest in any notes of their father representing amounts loaned to him after January 1, 1949. It follows that the petitioner is taxable on one-third of any interest on any such notes, and the respondent erred in including in his income any such interest which was properly taxable to the sisters. Statute of Limitations - 1949 Under section 275(f) of the 1939 Code the petitioner's return for the year 1949 is considered to have been filed on the last day for filing, that is, on March 15, 1950. The deficiency notice was mailed on March 7, 1955, which was more than 3 years but less than 5 years after the statutory filing date of the return. Under our holding that the amount shown on records of the truck leasing business as the petitioner's distributive share was properly to be included in his income, it is obvious that the petitioner *168 omitted from gross income an amount properly includible in excess of 25 percent of the amount shown. Consequently, the 5-year provision of section 275(c) of the Code is applicable and assessment and collection for the year 1949 are not barred by the statute of limitations. Additions under Section 294(d)(1)(A) The respondent has determined that the petitioner is subject to an addition to his tax for each of the years 1950 through 1953 because of his failure to file declarations of estimated tax as required by section 58(a) of the Code. The petitioner pleads the existence of reasonable cause on the ground of his reliance on A. S. Headley, who is said, in the petitioner's brief, to be an accountant. We have held that in order for reliance on another to constitute reasonable cause "It must appear that the intervening person was qualified to advise or represent the taxpayer in the premises and that petitioner relied on such qualifications." Rene R. Bouche, 18 T.C. 144, 149 (app. dismissed C.A. 2). The record in these proceedings contains no showing whatever of who A. S. Headley was or of his qualifications. It shows only in the testimony of the petitioner that the petitioner engaged him *169 to prepare "my income tax returns and to figure them out and to take care of this," and that Headley signed some of the income tax returns as being the person who prepared them. This is an insufficient showing to constitute reasonable cause under the Bouche case, supra. See also Volney L. Pinkerton, et al., 28 T.C. 910, 918. Moreover, the petitioner had dispensed with Headley's services before the declaration for the year 1953 was due, and had engaged the services of an accounting firm. No reason is given for the failure to file a declaration for that year. The respondent is sustained on this issue. Additions under Section 294(d)(2) The petitioner failed to file declarations of estimated tax for the years 1950, 1951, and 1952, and the respondent has made additions under the provisions of section 294(d)(2) of the 1939 Code. The statute does not provide for any extenuating circumstances which would afford relief from imposition of this addition where, within the terms of the statute, there has been an underestimate. H. R. Smith, 20 T.C. 663. In the recent case of Walter H. Kaltreider, 28 T.C. 121, 126 (on appeal C.A. 3), we held as follows: "Where no declaration of estimated tax *170 has been filed, the estimate is deemed to be zero and the addition to the tax provided in section 294 (d)(2) for substantial underestimate of estimated tax is mandatory. Harry Hartley, 23 T.C. 353 (1954), modified 23 T.C. 564 (1954); G. E. Fuller, 20 T.C. 308 (1953), affirmed on other grounds 213 Fed. (2d) 102 (C.A. 10, 1954)." See also Josef C. Patchen, 27 T.C. 592 (on appeal C.A. 5), Peterson v. United States (Dist. Ct., S.D. Texas, 1956), 141 Fed. Supp. 382, and Farrow v. United States (Dist. Ct., S.D. Cal., 1957), 150 Fed. Supp. 581. In view of the petitioner's failure to file declarations, we sustain the respondent's additions under section 294(d)(2). Decisions will be entered under Rule 50. Footnotes
1. This was apparently interest income since the record nowhere indicates that there was any dividend income.↩