## ERIE R. CO. v. OHIO PUBLIC SERVICE CO.

### No. 6040.

Circuit Court of Appeals, Sixth Circuit.
Dec. 6, 1932.

E. A. Foote, of Cleveland, Ohio (McGowan, Foote, Bushnell & Burgess, of Cleveland, Ohio, on the brief), for appellant.

C. H. Henkel, of Mansfield, Ohio, for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The appellee operates a street railway system in the city of Mansfield, Ohio, one of the lines of which formerly ran over the property of the appellant to the very door of its passenger station. A prior unreported case had established the validity and binding effect upon the parties to this litigation of a contract whereby the railroad company, appellant, granted to the street railway company, appellee, "the privilege of maintaining and using its one street railway track and the necessary appurtenances, wires and appliances connected therewith on the station grounds," and the street railway company in consideration thereof agreed to pay the entire cost of maintaining certain grade crossings of the railroad and street railway tracks at other points. Thereupon the street railway company abandoned its use of the station grounds. The present case involves the question whether, in view of such abandonment, the street railway company continues to be obligated to pay the entire cost of maintaining the designated grade crossings.

Construing the contract as a whole, and in the light of the respective situations of the parties and the benefits to be derived, we are of the opinion that it sufficiently expresses the intent that the obligation of the street railway company to pay the entire cost of maintaining the grade crossings should be coextensive as to time with the use of the station property, and should terminate upon the abandonment of such use. It is true that the contract provides that it may be terminated by the railroad company upon thirty days' notice and beyond this specifies no definite term or period of operation, but we do not think that this necessarily precludes the existence also of an intent that the obligation of the street railway company should terminate with the cessation of the use from whatever cause resulting. The right of termination by the railroad company is wholly inconsistent with an intent to grant a perpetual easement in the station grounds, and since the benefit to the street railway company was dependent solely upon its use of the property, and the payments by it were thus in the nature of rentals paid for such use under a tenancy which might cease to be of future practical value, and which was at the will of the railroad company, we are constrained to the opinion that the covenant to pay the rentals and the actual use of the property were intended to be relative and dependent.

It is highly improbable that intelligent business men would designedly assume on behalf of their own company an obligation which was terminable at the will of the other contracting party, and which could not be terminated by them in the event of a radical change of circumstances. "Business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs." The Kronprinzessin Cecilie, 244 U. S. 12, 24, 37 S. Ct. 490, 492, 61 L. Ed. 960. And we think that all intelligent men of affairs would have understood the obligations of the contract as practically unilateral from the date of initial occupancy; that is, as imposing the unilateral obligation upon the street railway company to pay for the maintenance of the grade crossings only so long as the station property was in fact used. There is no express covenant to continue such use indefinitely, and we cannot imply one.

The judgment of the District Court is therefore affirmed.