## BOEING v. UNITED STATES.
### No. 48472.

United States Court of Claims.
July 9, 1951.

Madden and Howell, Judges, dissented in part.

582

Lowell P. Mickelwait, Seattle, Wash., for plaintiff. Holman, Mickelwait, Marion, Prince & Black and DeForest Perkins, Seattle, Wash., were on the briefs.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

1. See findings 6 and 13.

2. 58 Stat. 21, 46.

3. Section 127 (c) of the Revenue Act of 1943, 58 Stat. 21, 47.

JONES, Chief Judge.

Plaintiff taxpayer was one of several co-owners of certain timberlands in the State of Washington. In 1922 plaintiff and his co-owners entered into a contract with the Greenwood Logging Company. Greenwood agreed to cut and remove timber, sell it at the current market price, and remit one-third of the gross proceeds to the owners—as plaintiff and his associates were referred to in the contract. The remaining two-thirds Greenwood was to retain. In 1928, plaintiff and others, as co-owners of different timberlands, entered into a contract with the Crescent Logging Company. The vendee—as Crescent was referred to in the contract—agreed to cut and remove timber from these lands and pay the vendors amounts based on rates set forth in the contract for the various species of timber.

This case involves the amounts received by plaintiff under these contracts in 1936 and 1937. In 1936 the difference between the amounts plaintiff received from these contracts and the adjusted depletion basis [1] of the timber was $42,671.34. The comparable figure for 1937 is $5,234.32.

Section 117(k) (2) of the Internal Revenue Code, 26 U.S.C.A. § 117(k) (2), provides: "In the case of the disposal of timber (held for more than six months prior to such disposal) by the owner thereof under any form or type of contract by virtue of which the owner retains an economic interest in such timber, the difference between the amount received for such timber and the adjusted depletion basis thereof shall be considered as though it were a gain or loss, as the case may be, upon the sale of such timber."

This provision was added to the Internal Revenue Code by Section 127 of the Revenue Act of 1943.[2] It was further provided [3] that a provision having the effect of Code Section 117(k) (2) "shall be deemed to be included" in the revenue laws applicable to all taxable years beginning after February 28, 1913.[4]

4. The Revenue Act of 1943 also added Section 117 (k) (1) to the Code:
   "If the taxpayer so elects upon his re-

Plaintiff contends that Section 117 (k) (2) covers these contracts. We must decide whether it does and, if it does, whether the effect of considering these gains as gains upon sales of timber (which is what 117(k) (2) provides for) is that they are taxable as capital gains. We must also decide whether there is merit in defendant's contention that plaintiff is estopped by the judgment in a prior case from here asserting that these gains are taxable as capital gains.

With respect to the first question, we hold that Section 117(k) (2) does apply to the Greenwood contract. We cannot agree with defendant that 117(k) (2) is limited to situations where the owner has leased the property or the timber. We think that the words of the Code—"any form or type of contract by virtue of which the owner retains an economic interest in such timber" —import more than leases alone. They are broad enough to cover a stumpage cutting contract such as Greenwood. See Springfield Plywood Corporation v. Commissioner of Internal Revenue, 15 T.C. 697.

Defendant contends that the Report of the Senate Committee on Finance indicates that Congress intended to restrict the application of Section 117(k) (2) to leases.[5]

turn for a taxable year, the cutting of timber (for sale or for use in the taxpayer's trade or business) during such year by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract right for a period of more than six months prior to the beginning of such year) shall be considered as a sale or exchange of such timber cut during such year. In case such election has been made, gain or loss to the taxpayer shall be recognized in an amount equal to the difference between the adjusted basis for depletion of such timber in the hands of the taxpayer and the fair market value of such timber [on the first day of the taxable year in which it is cut]. * * *"

A previous act, the Revenue Act of 1942, had added Section 117 (j) to the Code. 56 Stat. 798, 846. Section 117 (j) (1) defines "property used in the trade or business." Section 117 (j) (2) contains a formula which, if we oversimplify, can be said to provide that where the gains from sales of such property exceed the losses from sales of such property, the gains and losses are to be considered as if they were long term capital gains and losses.

When, in the Revenue Act of 1943, Congress added Section 117 (k) to the Code, it also provided for an expansion of Section 117 (j) (1)'s definition of "property used in the trade or business" so that this term should include timber "with respect to which subsection (k) (1) or (2) is applicable." This amendment of the definition of Section 117 (j) property was made effective as if the Revenue Act of 1942, which first inserted Section 117 (j) in the Code, had so provided. Section 127 (b) of the Revenue Act of 1943, 58 Stat. 21, 47.

5. The following is quoted from the Report, Senate Report No. 627, 78th Congress, 1st Session, pages 25–26; italics are added to emphasize defendant's contention:

"Your committee is of the opinion that various timber owners are seriously handicapped under the Federal income and excess profits tax laws. The law discriminates against taxpayers who dispose of timber by cutting it as compared with those who sell timber outright. The income realized from the cutting of timber is now taxed as ordinary income at full income and excess profits tax rates and not at capital gain rates. In short, if the taxpayer cuts his own timber he loses the benefit of the capital gain rate which applies when he sells the same timber outright to another. *Similarly, owners who sell their timber on a so-called cutting contract under which the owner retains an economic interest in the property are held to have leased their property* and are therefore not accorded under present law capital-gains treatment of any increase in value realized over the depletion basis.

"In order to remedy this situation, it is proposed to amend the existing law as follows:

* * * * * * * *

"If an owner of timber disposes of it under a contract by virtue of which he retains an economic interest in such timber, the amount received by such owner is to be treated in a similar manner. [i. e., as a gain or loss upon the sale of the timber.]

"This latter provision will afford relief to *those who have leased their property* under a contract whereby they retain an economic interest in the timber and are not entitled under the present law to capital gains treatment because of that fact.

"The amendments made by your committee are effective as to taxable years

True, the Report indicates that Section 117 (k) (2) was intended to cover leases, but its import—like that of the statute itself—is broader than leases alone. The legislative history of 117(k) indicates that Congress' principal purpose was to afford relief to timber owners. We have no doubt that the Greenwood contract falls within the terms of Section 117(k) (2).

We hold, therefore, that by the Greenwood contract plaintiff effected, within the meaning of 117(k) (2), a disposal of timber under a contract by virtue of which he retained an economic interest in the timber.

Section 117(k) (2), then, applies; therefore, these gains are to be considered as if they were gains upon sales of timber. The second question is whether gains upon sales of timber are taxable as ordinary income or as capital gains.

In the Revenue Act of 1943 Congress expressly made Section 117(k) (2) retroactive to all prior revenue laws. Since these gains were received in 1936 and 1937, the controlling law is the Revenue Act of 1936[6] with Section 117(k) (2) of the present Code deemed to be a part of it. The Commissioner of Internal Revenue's Regulation interpreting Section 117(k) could be taken to mean that a (k) (2) gain is to be considered a capital gain only in situations where Section 117(j) is also applicable.[7] Since 117(j) was not made retroactive beyond 1942,[8] the Regulation could be taken to mean that in no case are (k) (2) gains in years prior to 1942 to be treated as capital gains. If that is the effect of the Regulation, then we think the Regulation goes too far.

The controlling law tells us only that (k) (2) gains are to be considered as gains upon sales of timber. It does not tell us expressly whether gains upon sales of timber are taxable as capital gains or as ordinary income. Even prior to the enactment of Section 117(k), the courts had held that the proceeds of a sale of timber to a logging company under a cutting contract were capital gains. United States v. Robinson, 5 Cir., 129 F.2d 297; Estate of M. M. Stark, 45 B.T.A. 882. The decision in Commissioner of Internal Revenue v. Boeing, 9 Cir., 106 F.2d 305, certiorari denied 308 U. S. 619, 60 S.Ct. 295, 84 L.Ed. 517, which defendant contends estops plaintiff here and which we discuss more fully *infra*, went against taxpayer because the court concluded that the contracts did not effect sales of timber. But the law now provides that they are to be considered as if they did.

▮▮ Congress did not expressly provide that (k) (2) gains in years prior to 1942 should be treated as capital gains. However, it is obvious from the legislative history of Section 117(k) that Congress assumed that the courts and the Bureau would recognize gains from sales of timber as capital gains. Consequently, it did no more than prescribe that disposal contracts such as those involved here should be treated as if they were contracts of sale. The Report of the Senate Committee[9] and the Conference Report[10] leave no doubt that Congress expected that (k) (2) gains would be taxed as capital gains in all the years to which (k) (2) was made applicable.

These, then, are capital gains unless perhaps it can be said that plaintiff was in the

---

beginning after December 31, 1943, except with respect to the amendment dealing with *the owner who has leased his property* and who retains an economic interest in the timber. The latter amendment is effective as if it were a part of the Internal Revenue Code and of each prior revenue law on the date of its enactment."

6. 49 Stat. 1648.

7. Regs. 111, Sec. 29.117–8 (b). For Section 117 (j), see footnote 3, supra.

8. If 117 (j) had also been made retroactive back to 1913, then, of course, there would be no doubt that all (k) (2) gains

would be taxable as capital gains. As first passed by the Senate, the 1943 revenue bill did make 117 (j) retroactive to all prior years for this purpose. See 90 Cong. Rec. 101. Although in the bill as finally passed, Congress did not expressly so provide, there is some indication that it thought it had. See the Conference Report, House Report No. 1079, 78th Congress, 2d Session, page 53.

9. See footnote 5, supra.

10. See page 53 of the Conference Report. House Report No. 1079, 78th Congress, 2d Session.

trade or business of selling timber to logging companies. Two contracts, one in 1922 and one in 1928, did not have that effect. Nor could the logging companies' sales to their customers have had that effect on plaintiff. See Peebles v. Commissioner of Internal Revenue, 5 T.C. 14. We have found that plaintiff entered into these contracts for the purpose of liquidating his investments in timber. He entered into only two transactions. These gains were capital gains to him. See Dunlap v. Oldham Lumber Co., 5 Cir., 178 F.2d 781; Fahs v. Crawford, 5 Cir., 161 F.2d 315; Harriss v. Commissioner of Internal Revenue, 2 Cir., 143 F.2d 279.

As capital gains they are taxable in accordance with the capital gains provisions of the Revenue Act of 1936.[11] Section 117 (a) of that act provides that only 30 percent of the gain is to be taxed if the capital asset has been held more than ten years. There can be no question of the applicability of the ten-year provision to the Greenwood gains. Plaintiff had held the Greenwood lands for more than ten years prior to the signing of the Greenwood contract.

The terms of the Crescent contract are very different from those of Greenwood. In Crescent there was practically an outright sale of the timber. The owners were referred to as vendors, the purchaser as the vendee. The vendee acquired the right to cut, remove and appropriate all the merchantable timber and to pay at fixed rates. The contract bound the vendee to cut a minimum each year and to pay for any merchantable timber remaining uncut when the time for performance was ended. In other words, the timber was sold and plaintiff was to be paid by a certain date whether the timber was cut or not. We quote from the contract the following language: "The Vendee shall, notwithstanding anything hereinbefore provided, complete the work of cutting into saw logs and other timber products and removing all of the merchantable timber on said lands described in paragraph 1, on or before October 1, 1935, and in the event that not all of such merchantable timber on the lands

described in paragraph 1 has been so cut or removed on or before October 1, 1935, the quantity of merchantable timber remaining on said lands shall be determined as hereinafter provided, and shall be paid for by the Vendee upon the determination of the quantity of such timber, at rates per thousand feet, board measure, six (6%) per cent greater than those specified in paragraph VIII above, for the calendar year 1935."

Evidently the owners inserted this provision in order to make certain that all of the merchantable timber on the particular tract was actually sold. A stranger in going through this entire contract looking for some clause reserving an economic interest would have difficulty in finding a peg on which to hang his hat. We can find no such reservation. The only phrase in the entire contract that could possibly be construed as other than an outright sale is the one granting to the Crescent Company the right "to cut, remove and appropriate all merchantable timber." Any semblance of an owner's reserved right that may be found in this phrase is simply overwhelmed by the other provisions of the contract showing a completed sale. Crescent was to pay for all merchantable timber at the market price at the time of cutting, was to pay for it whether cut or not, and pay for it even if it happened to be destroyed by fire. The vendee (Crescent) was to pay all taxes on the timber. When the contract is read as a whole it is manifestly a sale. Contracts for the sale of wheat and other commodities are frequently made to be paid for at a fixed date at the then market. The forfeiture clause was only to be effective in the event the Crescent people breached their contract; in other words, to give extra assurance that they would comply with the terms of their contract. It is true that the timber was not cut until 1936 and 1937 and consequently the actual income was not received until then. This delay, however, was for the purpose of measuring payment when the timber was cut.

In the circumstances we conclude that the land and timber from which the

11. 49 Stat. 1648, 1691.

Crescent gains derived were not "held" by plaintiff beyond the time the Crescent contract was entered into. At that time, the property had been held less than ten years; it was acquired only in 1923 and 1925. Therefore, the 30 percent provision of Section 117(a) of the Revenue Act of 1936 does not apply to the Crescent gains. Each element of the Crescent gains will be governed by either the 60 percent (two to five years) or the 40 percent (five to ten years) provision of that statute, depending on when the tract from which that particular gain was derived was first acquired.

With respect to the Crescent contract the same result is reached whether or not the provisions of Section 117(k) (2) are construed as applicable. If the provisions of that section are applicable, the terms of Section 117(a) of the Revenue Act of 1936 still govern, the holding period is determined in the same way, and the Crescent gains are still ineligible for the 30 percent provision. Springfield Plywood Corporation v. Commissioner of Internal Revenue, supra.

It remains to consider whether the doctrine of estoppel by judgment precludes plaintiff from denying that the Greenwood gains are ordinary income. Defendant relies on the decision of the Circuit Court of Appeals, Ninth Circuit, in Commissioner of Internal Revenue v. Boeing, supra. That case involved gains to this same taxpayer in the earlier years of 1933 and 1934 from this same Greenwood contract and from a different contract with the Crescent Logging Company. The Board of Tax Appeals held that Mr. Boeing was not in the business of buying and selling timber and that the gains were therefore taxable as capital gains. Boeing v. C. I. R., 37 B.T.A. 178. The Circuit Court of Appeals reversed, holding that taxpayer had employed the logging companies to sell logs and that he was in the trade or business of selling logs through these companies. Therefore, it was held, taxpayer had received ordinary income.

■ The applicability of the doctrine of estoppel by judgment was explained by the Supreme Court in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct.

715, 92 L.Ed. 898. A litigant is estopped only to the extent that the legal matter raised in the second proceeding involves "the same set of events or documents and the same bundle of legal principles that contributed to the rendering of the first judgment." At page 602 of 333 U.S., at page 721 of 68 S.Ct. The doctrine is not applicable if changes or developments in the controlling legal principles have made the prior determination obsolete or erroneous. "And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice." At page 599 of 333 U.S., at page 720 of 68 S.Ct.

■ Since, as we have held, Section 117(k) (2), enacted after the decision in the former Boeing case, in terms covers the Greenwood contract, it follows that the doctrine of collateral estoppel has no application. For it is the effect of Section 117 (k) (2) that gains arising from contracts to which it applies are to be considered as gains upon sales of timber. This legislation changes the whole basis of the Ninth Circuit's decision which was that the contracts were not contracts of sale of timber. It was there held that the logging companies were independent contractors or agents through whom taxpayer sold logs. Since Section 117(k) (2) applies to Greenwood, we are now required as a matter of law to assume what the Ninth Circuit in the previous case held was not the fact. The effect of this change in the controlling legal principle is that the doctrine of collateral estoppel does not apply against plaintiff.

Only 30 percent of the Greenwood gains should have been taken into account in computing plaintiff's income for the years in question. The percentage of the Crescent gains to be taken into account will be determined as explained above. The amount of tax and interest already refunded to plaintiff, $2,649.91 (finding 11), is to be credited against plaintiff's judgment. The exact amount of the recovery will be determined after receipt of a stipulation by the parties in accordance with this opinion.

It is so ordered.

WHITAKER and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting in part).

I am unable to agree with the decision of the Court as it relates to the Crescent transaction. Our Finding No. 4 summarizing the Crescent writing shows that what was granted by the plaintiff to Crescent was the normal right to cut timber, paying for it as and when it was cut, with certain minimums of annual cutting stipulated, unless stated conditions should occur making cutting uneconomical. The transaction, properly analyzed, left in the plaintiff "an economic interest" within the language of Section 117(k) (2) of the most important kind possible. It left him with the ownership. It gave Crescent a *profit a prendre,* a right to become the owner upon reduction to possession by cutting. The other features of the writing relating to land taxes, risks of fire, etc., were agreed contractual arrangements shifting burdens or risks, but not, of course, making Crescent the owner of trees standing on Boeing's land. Hence I think Section 117(k) (2) is applicable.

The opinion of the Court, though indicating that the section is not applicable, concludes that its applicability would not affect the decision; that even if the plaintiff retained an economic interest in his transaction with Crescent, nevertheless 1928, the date of that transaction, was the date when the plaintiff parted with the timber which he had acquired in 1923 and 1925, and that, therefore, he had not held the asset for ten years and was not entitled to the lower tax rate applicable to a holding period of ten years or more.

This is a difficult question which has not been adequately presented to us in briefs and arguments. But it seems to me that the 1928 arrangement with Crescent did not terminate the plaintiff's "holding" of the timber, within the meaning of the tax statutes. He still "held" the timber, in the sense of owning it, though his holding was subject to the right of Crescent to cut it and pay for it unless, in turn, certain conditions arose, in which event there was no duty to currently cut or pay. If the plaintiff ceased to "hold" the timber in 1928,

presumably he then had a capital gains tax to pay, wholly or in part. But no tax could possibly have been computed because it could not be known until at least some of the timber was cut and it was determined what species it was, and what the market was, whether the plaintiff had a gain over the properly allocated cost of that timber. It seems to me that if the tax statutes, taken as a whole, are to hang together, they should not regard one as having made a taxable sale in 1928 when neither the Government nor the taxpayer could possibly assess or pay any tax at that time, and could not assess or pay the tax on the timber here in question until the years 1936 and 1937, when the timber here in question was cut and paid for. Then, for the first time, was it possible to know what gain, if any, the plaintiff had made on this part of the timber. The statutory provision for apportioning the tax to particular years in which payments come in, as if it were an installment sale, is not applicable, since the selling price, and consequently the gain, are not ascertainable until the particular piece of timber has been cut and paid for.

I think the plaintiff should recover the full amount claimed on the Crescent as well as on the Greenwood branch of his claim.

HOWELL, Judge, concurs in the foregoing dissent.