Erminio GIUSTINA and Irene O. Giustina, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Anselmo GIUSTINA and Josephine Giustina, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Natale B. GIUSTINA and Jacqueline Giustina, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Ehrman V. GIUSTINA and Marion Lee Giustina, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 9641–9644.

United States District Court
D. Oregon.
Dec. 21, 1960.

ture, held a public auction "for the sale" of certain timber "to be cut" from approximately 190 acres of timber land within the Willamette National Forest in Oregon. The amount of timber "to be cut" from the area was estimated at approximately 15,407,000 board feet. On March 4, 1948, the partnership, then known as Giustina Bros. Lumber Co., submitted the highest bid at the said "timber sale auction." On March 11, 1948, the Forest Service sent a letter to the partnership advising that the bid had been accepted.[1] Enclosed with the letter were four copies of the "timber sale agreement" prepared by the Forest Service, a form for obtaining a $6,000 bond and directions for executing the agreement and the bond. The partnership executed said agreement and returned it to the Forest Service on March 12, 1948. The Department of Agriculture executed the agreement on April 2, 1948.[2] On July 1, 1948, Luckey Boy Lumber Co., an Oregon corporation, changed its name to Giustina Bros. Lumber Co., an Oregon corporation. On the same date the partnership entered into a written contract[3] for the sale of all partnership operating assets used in the cutting, hauling and milling of timber and on said date entered into a contract giving the corporation the right to cut timber on certain lands owned by the partners. The timber which was the subject of the contract with the Forest Service was not included in such contract. Subsequent to said date Giustina Bros. partnership arranged for the cutting and removal of the Forest Service timber by said corporation. A letter dated October 4, 1948[4] was directed by the partnership to the corporation concerning the right of the corporation to cut such timber pursuant to the terms of the timber contract. The corporation cut and removed some timber from the property covered by the Forest Service

William E. Dougherty; Dougherty & Cairns, Portland, Or., for plaintiff.

C. E. Luckey, U. S. Atty., Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., Charles H. Magnuson and Dale E. Anderson, Atty., Dept. of Justice, Washington, D. C., for defendant.

KILKENNY, District Judge.

Plaintiffs prosecute these actions, consolidated for trial, for the recovery of individual income taxes, plus interest, assessed against and collected from them for their taxable years ending December 31, 1949 and 1950.

Plaintiffs Erminio Giustina, Anselmo Giustina, Natale B. Giustina and Ehrman V. Giustina conducted a partnership business in the state of Oregon. After July 1, 1948, the partnership was conducted under the name of Giustina Bros. The wives were not members of the partnership.

On March 4, 1948, the Forest Service, United States Department of Agricul-

---

1. for selected portions of communication, see Appendix A

2. for selected portions of agreement, see Appendix B

3. Relevant portions set forth in Appendix C

4. Appendix D.

contract prior to October 2, 1948, but the timber so cut was a minimal percentage of the total.

Timely income tax returns were filed by each plaintiff and his wife for the years 1949 and 1950 and the taxes as shown by the returns were paid. These returns reflected each partners' distributive share of partnership profits for its fiscal year ending January 31, 1949 and 1950. The partnership returns reported as capital gain such amounts as were received by the partnership from the sale of the timber under its arrangement with the corporation, Giustina Bros. Lumber Co. After an audit of the returns the Commissioner of Internal Revenue determined that the income received by the partnership from the corporation on account of timber covered by the Forest Service contract was not allowable as a long-term capital gain.

The question presented is whether the amount received by plaintiffs from the partnership resulting from the arrangement between the partnership and the corporation as to the cutting and removing of timber pursuant to the agreement with the United States Department of Agriculture should be treated as income from the sale of a capital asset within the meaning of § 117(a) or § 117(k) (2) of the Internal Revenue Code of 1939 (26 U.S.C. § 117(a), (k) (2) ), or should be treated as ordinary income.

The contentions of the respective parties require a construction of certain sections of the Internal Revenue Code of 1939 and the nature of the ownership of the timber acquired by the partnership under such contract. Section 117, Internal Revenue Code of 1939, provides, among other things:

"117. Capital gains and losses

"(a) Definitions. As used in this chapter—

"(1) Capital assets.—The term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

\* \* \* \* \* \*

"(4) Long-term capital gain.— The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing gross income."

Section 117(j) (as added by § 151(b) of the Revenue Act of 1942, and amended by § 127(b) of the Revenue Act of 1943, c. 63, 58 Stat. 21) provides in material part:

"Gains and losses from involuntary conversion and from the sale or exchange of certain property used in the trade or business.—

"(1) Definition of property used in the trade or business.—For the purposes of this subsection, the term 'property used in the trade or business' \* \* \* also includes timber or coal with respect to which subsection (k) (1) or (2) is applicable \* \* \*.

"(2) General rule.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains or exchanges of capital

assets held for more than 6 months * * *.

* * * * * *

"(k) Gain or loss in the case of timber or coal.—

"(1) If the taxpayer so elects * * * the cutting of timber (for sale or for use in the taxpayer's trade or business) * * * by the taxpayer who owns, or has a contract right to cut, such timber (providing he has owned such timber or has held such contract for a period of more than six months * * *) shall be considered a sale or exchange of such timber cut * * *.

"(2) In the case of the *disposal of timber* * * * held for more than 6 months prior to such disposal, by the owner thereof under any form or type of contract by virtue of which the owner retains an economic interest in such timber * * * the adjusted depletion basis thereof shall be considered as though it were a gain or loss, as the case may be, upon the sale of such timber * * *."

The Senate Report[5] on § 127(b) of the Revenue Act of 1943 is of importance in the construction of this legislation. Before proceeding to an examination of the contract between the Forest Service and the partnership, which must be interpreted in light of the foregoing provisions of the Internal Revenue Code, we should state a few principles of law which seem to be applicable.

▇▇ The parties recognize the rule that ordinarily the validity and the con-

struction of a contract with respect to the rights and obligations created thereby are governed by the law of the state where the contract is made. Award Incentives, Inc. v. Van Rooyen, 2 Cir., 1959, 263 F.2d 173, 70 A.L.R.2d 1285; Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036; Schram v. Smith, 9 Cir., 1938, 97 F.2d 662. However, we are not construing a contract between private persons. The United States is a party to this contract. The validity and construction of contracts through which the United States is exercising its constitutional functions, their consequences on the rights and obligations of the parties and the titles or liens which they create or permit, present questions of federal law not controlled by the laws of any state. United States v. Allegheny County, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209; S. R. A., Inc. v. State of Minnesota, 327 U.S. 558, 564, 66 S.Ct. 749, 90 L.Ed. 851; United States v. Jones, 9 Cir., 1949, 176 F.2d 278.

▇▇ Business contracts must be construed with such business sense as they would naturally be understood by intelligent men of affairs. Erie Railway Co. v. Ohio Public Service Co., 6 Cir., 1932, 62 F.2d 83; In re International Match Co., D.C.S.D.N.Y.1937, 20 F.Supp. 420. A contract must receive the construction which is most probable and natural under the circumstances, so as to obtain the object which the parties to it had in mind at the time it was made. Decatur Bank v. St. Louis Bank, 21 Wall. 294, 88 U.S. 294, 22 L.Ed. 560; United

---

5. "The law discriminates against taxpayers who dispose of timber by cutting it as compared with those who sell timber outright. The income realized from the cutting of timber is now taxed as ordinary income at full income and excess profits tax rates and not at capital gain rates. In short, if the taxpayer cuts his own timber he loses the benefit of the capital gain rate which applies when he sells the same timber outright to another. Similarly owners who sell their timber on a so-called cutting contract under which the owner retains an economic interest in the property are held

to have leased their property and are therefore not accorded under present law capital-gains treatment of any increase in value realized over the depletion basis.

* * * * *

"This latter provision will afford relief to those who have leased their property under a contract whereby they retain an economic interest in the timber and are not entitled under the present law to capital gains treatment because of that fact." S.Rep. 627, 78 Cong., 1st Sess. pp. 25, 26 (1944 Com.Bull. 973, 993).

States v. Granite Company, 105 U.S. 37, 26 L.Ed. 1005. The Court should not attempt to remake the contract between the parties. Dermott v. Jones, 2 Wall. 1, 69 U.S. 1, 17 L.Ed. 762; Lowber v. Bangs, 2 Wall. 728, 69 U.S. 728, 17 L.Ed. 768. A contract will be construed most strongly against the party drafting it. Grace v. American Central Insurance Co., 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932; Kingman Water Co. v. United States, 9 Cir., 1958, 253 F.2d 588; J. C. Millett Co. v. Distillers Distributing Corporation, 9 Cir., 1958, 258 F.2d 139. Where a contract was on a regular printed form prepared and used generally by one of the parties, it should be construed most strongly against such party. Mt. Vernon Refrigerating Co. v. Fred W. Wolf Co., 6 Cir., 1911, 188 F. 164.

Law which exists at the time of making a contract, whether affecting its construction or its enforcement or discharge, is a part thereof as though expressly referred to and incorporated therein. Walker v. Whitehead, 16 Wall. 314, 83 U.S. 314, 21 L.Ed. 357; Connecticut Mutual Life Insurance Co. v. Cushman, 108 U.S. 51, 2 S.Ct. 236, 27 L.Ed. 648; Brine v. Hartford Fire Insurance Co., 96 U.S. 627, 24 L.Ed. 858.

Where technical words are used and their meaning has previously been conclusively settled by long usage and judicial construction, the use of the words without an indication of an intention to give them a new significance is an adoption of their accepted meaning at the time when used. United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; Carter v. Liquid Carbonic Pacific Corp., 9 Cir., 1938, 97 F.2d 1. Where words are used in a writing which had at the time a well known meaning in the law, they are used in that sense unless the context clearly requires a contrary use. Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505; Swearingen v. United States, 161 U.S. 446, 16 S.Ct. 562, 40 L.Ed. 765.

If the United States Government, or any branch thereof, enters into a contract with an individual, natural or corporate, it does so in its private or business capacity and not as a sovereign, and submits itself to the same rules of law which govern the construction of contracts between individuals. Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; Reading Steel Casting Co. v. United States, 268 U.S. 186, 45 S.Ct. 469, 69 L.Ed. 907; S. R. A., Inc. v. State of Minnesota, supra; Lundstrom v. United States, D.C.Or.1941, 53 F.Supp. 709, affirmed 9 Cir., 139 F.2d 792.

Where a contract between a Federal agency and a private corporation was written in its entirety by the agency, its language would be construed most strongly against such agency. Reconstruction Finance Corporation v. Sullivan Mining Co., 9 Cir., 1956, 230 F.2d 247; Lowell O. West Lumber Sales v. United States, 9 Cir., 1959, 270 F.2d 12.

The parties seem to be in complete agreement on the conditions which must be met by plaintiffs in order to qualify for long-term capital gains treatment under § 117(k) (2). These requirements are: (1) the partnership must be the "owner" of the timber in question; (2) this timber must have been held for more than six months prior to disposal; (3) plaintiffs must have disposed of such timber; and (4) such disposition must have been under a contract in which plaintiffs retained an economic interest in such timber.

I. Under Federal law was the partnership an "owner" of the timber under the meaning of that term as used in said section of the Internal Revenue Code? For an answer we must look not only to the legislation, but also to the contract in question. The words as used in the legislation are presumed to be used in their ordinary sense and if technical words, they are presumed to be used in their technical sense. Since the United States was acting in a private capacity in selling this timber, the foregoing au-

thorities direct that it be treated as a private individual or corporation and that the contract be construed as if it were between private individuals or corporations. The contract is on a form which is headed

United States Department of Agriculture
Forest Service
Timber Sale Agreement

At the bottom of the page is the language, "U. S. Government Printing Office." Since the contract was prepared and printed by the United States in case of ambiguity, it must be construed against the defendant. The word "sale" is a word of precise legal import, both at law and in equity. It means at all times a contract between parties to give and to pass rights of property for money, which the buyer pays or promises to pay to the seller for the thing bought and sold. Williamson v. Berry, 8 How. 495, 49 U.S. 495, 543, 12 L.Ed. 1170; DeBary v. Souer, 5 Cir., 1900, 101 F. 425, 427; People ex rel. Stevenson v. Law & Order Club, 203 Ill. 127, 67 N.E. 855, 62 L.R.A. 884; Coulter v. Portland Trust Co., 20 Or. 469, 26 P. 565, 27 P. 266; Olsen v. Rasmussen, 146 Or. 648, 654, 30 P.2d 329. Long before the date of the contract in question both the United States Supreme Court and the Supreme Court of Oregon had clearly defined the word "sale" and the parties to the present contract must have used the word in that sense. The contract recites that the partnership is the purchaser and that it agreed "to purchase * * * all the dead timber standing or down and all the live timber marked or designated for cutting," consisting of an estimated amount of 15,407,000 board feet. "Purchaser" has a well defined legal meaning. It is one who, for a valuable consideration, acquires property or an interest in property. National Refining Co. v. United States, 8 Cir., 1947, 160 F.2d 951, 955; United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271. In common parlance a purchaser is one who acquires property for a consideration, generally of money; a buyer, a vendee. Webster's New Interna-

tional Dictionary, 2nd Edition, 2015. We must conclusively presume that the defendant was familiar with the definition as given to such words by the highest federal courts when it drafted and printed the contract in question. The contract requires the partnership to make advance payments on the purchase price, the initial payment to be not less than $10,000 nor more than $25,000 in the discretion of the Forest Officer in charge. In any event, the partnership was required to pay for $10,000 worth of timber in advance and the partnership was required to cut and remove all of the timber sold on or before December 31, 1949. A short extension of time was granted. Throughout the contract the partnership is referred to as the "purchaser." On its face the contract in question could be described as an elaborate version of an ordinary contract for the sale of timber.

In addition to the requirement of the substantial advance payments, the contract required the purchaser to post a surety bond in the sum of $6,000 as security for the faithful performance of the contract. The record discloses that this bond was actually furnished on March 14, 1948. The extension of time was granted on December 6, 1949 and gave purchaser to September 30, 1950 in which to cut and remove the timber in compliance with the contract. At the time of the extension purchaser had paid on the contract $122,080.88 and had cut and scaled timber of a value of $100,514.-22. At that time the partnership had an equity in the standing timber of approximately $21,500.

Defendant argues that the retention of the title by it, under the terms of the contract, prevented any type of ownership from passing to the partnership. In passing on a question of income tax liability, the legal title is of little consequence and the inquiry should be made as to the ownership of the beneficial interest. Park, Davis & Co., 31 B.T.A. 427, 431. The United States Supreme Court has spoken with authority on the nature of the ownership and title

which passes under a contract such as this. In S. R. A., Inc. v. State of Minnesota, supra, 327 U.S. at page 564, 66 S.Ct. at page 754, the Court said:

" * * * Turning to the contract, we find in it no characteristics which differentiate it from the normal executory contract for the sale of land with partial payments. Normally, contracts between the United States and others are construed as contracts between private parties. Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434. This Court has been of the opinion that contracts for the sale of land transfer to the purchaser the equity in the land. We think this contract did so. That equity is realty. It was *owned* by the vendee. *The United States retains only a legal title as security.* In substance it is in the position of a mortgagee. Minnesota has the same rule. In re S. R. A., Inc., 219 Minn. 493, 507, [18 N.W.2d 442].; 213 Minn. 487, 495, 499, [7 N.W.2d 484]. Therefore when petitioner entered into possession of this real estate under its contract to purchase, the taxed property by the transfer became subject to the territorial jurisdiction of Minnesota."

Counsel for both the plaintiffs and defendant have devoted most of their arguments to the effect of the law of the state of Oregon as applied to this contract and to the decision of the Ninth Circuit in Jantzer v. C. I. R., 284 F.2d 348, and the decision of the Tax Court in L. D. Wilson, 26 T.C. 474. Each of those cases involved timber contracts between private persons and corporations and in each case it was recognized that Oregon law would control on the question of the interest of the purchaser under the terms of the particular contract. As previously indicated, I believe that federal, rather than state, law applies. In this connection I believe there is little, if any, distinction between the federal law as announced by the United States Supreme Court in S. R. A., Inc. v. State

of Minnesota, supra, and the Oregon law as announced by the Oregon Supreme Court. Blackburn v. Maloney, 189 Or. 76, 218 P.2d 459; Panushka v. Panushka, Or., 349 P.2d 450; Flanagan v. Great Central Land Co., 45 Or. 335, 77 P. 485. These cases hold that if the contract is to be treated as the transfer of an interest in real property, the purchaser is to be viewed as the equitable *owner*. Walker v. Mackey, 197 Or. 197, 251 P.2d 118, 253 P.2d 280. The sale of standing timber with the right of the buyer to cut and remove the same is a *sale* and not a mere license. Dunham v. Taylor, 211 Or. 618, 626, 317 P.2d 926; Schroeder v. Toedtmeier, 184 Or. 561, 581, 200 P.2d 606; Seguin v. Maloney-Chambers, 198 Or. 272, 284, 253 P.2d 252, 256 P.2d 514, 35 A.L.R.2d 1412. Likewise, the federal courts and the Supreme Court of Oregon are in accord on the effect of a contract for the sale of timber which requires of the purchaser payment for and immediate removal, or removal within a reasonable period of time. We quote from Judge Wolverton's opinion in Goodnough Mercantile & Stock Co. v. Galloway, D.C., 171 F. 940, 951:

"Incidentally, the question has been presented whether the right to cut and remove standing timber is an interest in land which must be transferred by deed. In regard to the question, 'it is now very generally recognized,' say the authors of the American & English Encyclopedia of Law (volume 28, p. 541), 'that a contract for the sale of trees, if the vendee is to have the right to the soil for a time for the purpose of further growth and profit, is a contract for an interest in land, but that where the trees are sold in the prospect of separation from the soil immediately or within a reasonable time, without any stipulation for the beneficial use of the soil, but with license to enter and take them away, it is regarded as a sale of goods only, and not within the fourth section of the statute.'

"Under this rule the timber contracts were subject to assignment without the observance of the formalities of a deed."

This decision was on law which existed prior to the enactment of the Uniform Sales Act effective in Oregon on February 22, 1919. The law as announced by Judge Wolverton is in accord with the general rule on the subject. Reid v. Kier, 175 Or. 192, 152 P.2d 417; Paullus v. Yarbrough, 219 Or. 611, 347 P.2d 620. Justice Kelly, in Reid v. Kier, supra, thoroughly analyzes the law and cites Judge Wolverton in the Goodnough case in support of the decision in the Reid case. If the partnership was the *owner* of either an equitable title to the timber as an interest in the land, or the owner of the timber, as personal property under the constructive severance rule where the contract required a cutting and removing of the timber within a reasonable time, the partnership should be entitled to capital gains treatment of the fund in question. Certainly, Congress was familiar with both the technical and common definitions of "owns" and "owner." In this connection I quote from United States v. Ninety-Nine Diamonds, 8 Cir., 1905, 139 F. 961, 971, 2 L.R.A.,N.S., 185:

" 'To own' is defined 'to hold as property; to have a legal or rightful title to; to have; to possess'—and an 'owner' is 'one who owns; a rightful proprietor.' *An owner is not necessarily one owning the fee simple* or one having in the property the highest estate it will admit of. One having a lesser estate may be an owner, and, indeed, there may be different estates in the same property vested in different persons, and each be an owner thereof."

If we treat the contract as creating personal property then it would be governed by the general law on construing conditional sales contracts. Under such law the vendee is considered the owner with the right to become the absolute owner on complying with the terms of the contract. Richardson v. Bouthillier, 193 Or. 354, 360, 238 P.2d 212; William W. Bierce, Ltd. v. Hutchins, 205 U.S. 340, 27 S.Ct. 524, 51 L.Ed. 828.

Having concluded that the federal law is the same as the Oregon law on the subject, an examination of the present contract in the light of the decisions in Jantzer and Wilson is in order. The contract involved in the Wilson case is practically identical with the present contract, with the following exceptions: (1) in Wilson the purchaser was to pay all taxes on the timber, and (2) there was no restriction on assignment. In the present contract there is no mention as to who would pay the taxes and that is true for a very good reason. The timber was not subject to taxes by the taxing agencies of the state of Oregon as long as it was owned by defendant. When the contract was made the timber was to be removed before the end of the calendar year in which the contract was made. Since there was no tax lien on the timber at the time of purchase and as assessment could not be made until the following year, there was no reason for mentioning taxes. Furthermore, if an assessment had been made by the state of Oregon, it was the partnership which would have been required to pay such tax. ORS 307.050.[6] This provision requiring payment of taxes by the purchaser under contracts with the United States would necessarily be read into and become a part of the present agreement. The restriction on assignment in the present contract is not such as would absolutely prevent the partnership from transferring its interest. It is a well recognized rule that where a provision against the assignability of a contract for the sale of an interest in land is not followed by a provision for the forfeiture of the contract, the assignment does not operate to forfeit the contract or confer an excuse for the vendor's refusal to carry it out if the obligations of the purchaser under the

6. Oregon Revised Statutes.

contract are due and have been fully performed or duly tendered by him or the assignee. Cheney v. Bilby, 8 Cir., 1896, 74 F. 52; Restatement, Law of Contracts, Vol. 1, § 176; 55 Am.Jur. 842, 843; 148 A.L.R. 1363; Nielsen v. Baldridge, 173 Or. 555, 146 P.2d 754. In this contract there is no specific provision for forfeiture in the event of an assignment and the foregoing rule would be applicable. I do not believe that the two major differences between the contract in Wilson and the present contract are of any importance. As previously mentioned, the other features of the contract in Wilson are quite similar to those here involved. The decision of the Tax Court in Jantzer turned on the fact that there was no definite and specific limitation placed on the time in which to remove the timber. 32 T.C. 161, 171. The Court of Appeals did not place as much weight on this feature as it did on the fact that the *landowner* was required to pay the taxes. Of course, such a requirement would definitely indicate an intention on the part of the parties that no title to the timber passed to the purchaser. Furthermore, the Court in Jantzer made it clear that it was merely deciding on the question of whether the decision of the Tax Court was clearly erroneous. Jantzer is not in point.

Defendant places its main reliance on the Washington case of Skate Creek Logging Company v. Fletcher, etc., 46 Wash. 2d 160, 278 P.2d 1009. The decision in that case could have been limited to the question of whether a local taxing agency could tax standing timber as long as the legal title remained in the United States. Washington had no such enabling statute as had been enacted by the legislature of the state of Oregon. The Washington court did not limit its decision to the facts before it, but proceeded to hold that even under a private contract the vendee under a contract quite similar to the contract in the present case did not acquire any beneficial interest or title. In order to understand that decision it is necessary to turn to the decisions of the Washington Supreme Court construing similar contracts between private persons. As early as 1925 that Court, in Ashford v. Reese, 132 Wash. 649, 233 P. 29, held that a vendee under a land sale contract acquired no title, legal or equitable. The adoption of this rule caused a great deal of confusion. In various manners the Washington Court has proceeded to modify the rule as adopted in Ashford. In Griffith v. Whittier, 37 Wash.2d 351, 223 P. 2d 1062, the Washington Supreme Court said:

"Whatever we may have meant by our unfortunate choice of language in Ashford v. Reese, supra, it is now abundantly clear that the purchaser under an executory contract has a valid and subsisting interest in property that is the subject matter of such a contract."

In Windust v. Department of Labor & Industries, 52 Wash.2d 33, 323 P.2d 241, 244, the lack of respect of the Washington Court for the rule as announced in Ashford is demonstrated by its reference to what has happened to the rule:

"The cumulative effect of many slight deviations is demonstrated by the rule of Ashford v. Reese, 132 Wash. 649, 233 P. 29, which, in 1925 held that a vendee under an executory contract to purchase real property acquired no title or interest, legal or equitable, in it. It has never been overruled, yet, in a series of subsequent cases, it has been whittled away until nothing remains." 32 Wash.L.Rev. 130.

Dean Alfred J. Schweppe of the University of Washington Law School, in commenting on the rule in Ashford, suggested that if the court would directly overrule that decision, "the rule in this state would again be in accord with the virtually uniform current of authority elsewhere and make it unnecessary for the legislature to intervene." 32 Wash. L.Rev. 130. The rule in Washington is in direct conflict with the rule as announced by the United States Supreme Court in S. R. A., Inc. v. Minnesota, supra.

The contract in Skate would seem to differ from the present contract. In Skate it is said [46 Wash.2d 160, 278 P.2d 1009] "the contracts estimated the value of the timber contemplated generally, but made it specifically ascertainable upon the cutting and scaling of the logs. Fixed stumpage rates were then payable out of the deposits required of respondents by the contracts." The present contract provides, "payments of stumpage * * *, shall be made in advance." "Stumpage" has a well defined legal meaning. It means standing timber. Nitz v. Bolton, 71 Mich. 388, 39 N.W. 15, 16; United States v. Mills, C.C., 9 F. 684, 687; Ciapusci v. Clark, 12 Cal. App. 44, 106 P. 436, 438. Clearly, these advance payments were in payment of an interest in standing timber as distinguished from payment for logs after cutting and scaling.

It is my conclusion that the partnership qualifies as the "owner" of the timber within the meaning of the statute in question.

II. Defendant contends that even though the partnership was the "owner" of the timber in question, it did not hold such timber for more than six months prior to disposal. The auction sale was held on March 4, 1948. By letter of March 11, 1948, referring to the March 4 sale, the Forest Service advised the partnership that its bid for the timber in question had been accepted. The formal contract was signed by the partners on March 12, 1948, but was not signed on behalf of the defendant until April 2, 1948. I fully agree with Judge Boldt's clear-cut statement on this subject as reported in Wagar Lumber Co. v. United States, D.C., 181 F.Supp. 388, 390, where it is said:

"Where the government follows a procedure of advertising for and receiving bids, one of which is accepted, and thereafter presents formal written contracts for execution by the parties, it is well settled that the contract is effected when the suc-

cessful bidder has been notified of his award, all subsequent steps being merely formal and ministerial. See Garfielde v. United States, 93 U.S. 242, 1876, 23 L.Ed. 779 and United States v. Purcell Envelope Co., 249 U.S. 313, 1919, 39 S.Ct. 300, 63 L.Ed. 620."

Defendant's contention that the contract did not become effective until April 2 is without merit.

The statute in question required the partnership to hold said timber, without disposal, for a period of six months after the acquisition. I find as a fact that there was no disposal of the timber prior to October 4, 1948, the date of the letter [7] from the partnership to the corporation, Giustina Bros. Lumber Co. This being my finding, it is of no consequence whether I would hold the contract between the plaintiffs and defendant effective as of March 11 or April 2. In either case the six-month period had expired. There is some evidence that the corporation's logging superintendent started some cutting before any contractual arrangement was made between the partnership and the corporation. However, there is absolutely no evidence that there was any contract disposing of this timber prior to October 4. The record discloses the amount of the timber which was cut in September and the value of that portion, if any, cut prior to September 11 should be treated as ordinary income and would not be entitled to capital gains treatment. This conclusion is supported by the decision of the Ninth Circuit in Ah Pah Redwood Co. v. Commissioner, 1957, 251 F.2d 163.

III. The contract between the partnership and the corporation [8] is without question a disposal of the timber. Under the terms of this letter and the contract to which it refers, the corporation was required to cut and remove the timber. The remainder of the terms and conditions of the contract are set forth in the agreement between these

7. See Appendix D.

8. See Appendix D.

parties dated July 1, 1948. I find there was a disposal of the timber within the purview of the statute. L. D. Wilson, supra; Ah Pah Redwood Co. v. Commissioner, supra; Boeing v. United States, 98 F.Supp. 581, 121 Ct.Cl. 9.

IV. The prices mentioned under the contract of July 1, 1948,[9] are applicable to the contract of October 4 of the same year. Those prices were basically computed upon an agreed formula at 60% of the corporate buyer's sales after excluding certain property and deducting certain costs. It is clear that the gain to the partnership was measured by the sales of the corporation and was dependent on the severance of the timber. The partnership's retention of an economic interest in the timber is evidenced by the fact that it looks to severance of the timber for a return of its investment. This being so, the partnership retained such an economic interest in the timber as would permit it to qualify under the statute. L. D. Wilson, supra, Boeing v. United States, supra. I quote from Mertins on Federal Income Taxation, Vol. 3B, § 22.128, p. 547, where it is said:

> "An 'economic interest' is retained where the taxpayer must look to a severance of the timber for a return of its investment. There was held to be a qualified 'disposal' where a partnership, which had bought rights to cut and remove timber, arranged with a corporation, which was owned entirely by the partners, for the corporation to cut and remove the timber and to pay the partnership at a rate dependent upon the prices received by the corporation for the lumber."

Counsel for plaintiffs shall draft findings, conclusions and judgment in each case in conformity with this opinion.

Appendix A
"March 11, 1948

"* * * We are pleased to advise that your bid for the timber in T. 16 S., R. 7 E., W.M., has been accepted.

"Enclosed are four copies of the timber sale agreement, two copies of the form for obtaining the $6,000.00 bond, and Form 319, Directions for Executing Agreements and Bonds. Three copies of the agreement should be dated, signed, witnessed and returned to this office. One copy of the bond should be executed and returned with the agreement, the extra copy of agreement and bond being for the surety. * * *"

Appendix B
"United States Department of Agriculture
"Forest Service
"Timber Sale Agreement
"Sales—Willamette
"Giustina Bros. Lbr. Co.
"March 4, 1948

"Description of Timber,—1. We, Erminio Giustina, Anselmo Giustina, Natale B. Giustina, Ehrman Giustina, Dorothea Giustina, and Madalena Giustina Fox, partners, doing business under the firm name of Giustina Bros. Lumber Company and having an office and principal place of business at Eugene, State of Oregon, hereinafter called the purchaser, hereby agree to purchase from an area of about 190 acres to be definitely designated on the ground by a Forest officer prior to cutting, in portions of Sections 29, 30, 31, 32, T. 16 S., R. 7 E., W.M., (unsurveyed) within the Horse Creek drainage, within the Willamette National Forest, as approximately designated on the attached map which is a part of this agreement, at the rate or rates and in strict conformity with all and singular the requirements and conditions hereinafter set forth, all the dead timber standing or down and all the live timber marked or designated for cutting by a Forest officer, merchantable as hereinafter defined for sawlogs.

"Timber upon valid claims and all timber to which there exists valid claim under contract with the Forest Service is exempted from this sale. The estimated

9. See Appendix C.

amount to be cut under the methods of marking described in section 4 is

13,363,000 feet, B.M.,
of Douglas-fir
181,000 feet, B.M.,
of Western redcedar
50,000 feet, B.M.,
of white pine
1,813,000 feet, B.M.,
of western hemlock
and other species

"A total of 15,407,000 feet, B.M., more or less, of live and dead sawtimber.

"Payments.—2. The purchaser hereby agrees to pay to the Treasurer of the United States (all remittances to be mailed to the Regional Fiscal Agent, Forest Service, Portland, Oregon), or such other depository or officer as shall hereafter be designated, to be placed to the credit of the United States, for the timber at the following rates for stumpage:

$8.00 per M feet, B.M., log scale, for Douglas fir
$5.85 per M feet, B.M., log scale, for western redcedar
$8.00 per M feet, B.M., log scale, for western white pine
$2.65 per M feet, B.M., log scale, for western hemlock and other species.

\*      \*      \*      \*      \*      \*

"2c. Payments of stumpage, and of other deposits, shall be made in advance, when called for by the Forest Officer in charge. The total of such payments called for at any one time shall not be less than ten thousand dollars ($10,000.-00) nor more than twenty-five thousand dollars ($25,000.00) as determined by the Forest Officer in charge except just before the completion of the sale or before a period when cutting operations are to be suspended for at least three (3) months, when the amount of the payments may be reduced in writing by the Forest Officer in charge. Credit shall be given for the sums, if any, theretofore deposited with the said United States depository or officer in connection with this sale.

\*      \*      \*      \*      \*      \*

"Period of Contract—3. Unless extension of time is granted, all timber shall be cut and removed and the requirements of this agreement satisfied on or before December 31, 1949.

"Marking.—4. Live timber shall be marked or designated for cutting as follows: The exterior boundaries of the sale area shall be plainly marked or designated. Three separate cutting blocks embracing a total of 190 acres, more or less, as approximately shown on the attached sale area map, shall be designated for cutting. Merchantable dead timber, standing or down, of all species within the cutting area shall be cut and removed.

"The boundaries of the cutting blocks shall be plainly marked, and all timber within such blocks shall be considered as designated for cutting.

\*      \*      \*      \*      \*      \*

"Scaling.—Sec. 7.—Title. The title to all timber included in this agreement shall remain in the United States until it has been paid for, felled and scaled, measured or counted.

\*      \*      \*      \*      \*      \*

"16. The purchaser shall cut all and only marked or designated live trees and shall remove all merchantable material from the sale area. *No timber shall be cut until paid for*, nor removed from the place or places agreed upon for scaling until scaled, measured, or counted by a Forest Officer, or Bureau scaler. (Emphasis added.)

\*      \*      \*      \*      \*      \*

"Other Conditions. Sec. 46.—*Sale of Other Products*. The United States reserves the right to sell from the sale area during the life of this agreement any material not covered by the terms of this agreement; *Provided*, That the removal of such material shall not, in the judgment of the Forest officer in charge, interfere with the operations of the purchaser.

\*      \*      \*      \*      \*      \*

"53. The term 'Forest Officer in charge,' wherever used in this agreement, signifies the officer of the Forest

Service who shall be designated by the proper supervisor to supervise the timber operations *in this sale.* (Emphasis added.)

\* \* \* \* \* \*

"55. The conditions *of the sale* are completely set forth in this agreement, \* \* \*. (Emphasis added.)

"56. \* \* \* The purchaser agrees that all moneys deposited under this agreement may, upon failure on his part to fulfill all and singular the requirements herein set forth or made a part hereof, be retained by the United States to be applied as far as may be to the satisfaction of his obligations assumed hereunder, without prejudice whatever to any other rights and remedies of the United States."

Appendix C

(Relevant portions of Timber Contract)

"1. Subject Matter. The Sellers agree to sell to the Buyer, and the Buyer agrees to purchase from the Sellers, for the consideration hereinafter stated, and upon and subject to the terms, provisions and conditions hereinafter contained, one hundred and fifty million board feet of merchantable timber to be cut and removed from the parcels of land \* \* \*.

\* \* \* \* \* \*

"(b) No title to any of said parcels of land shall pass to the Buyer by virtue of this Agreement. \* \* \*"

\* \* \* \* \* \*

"4. Price. (a) For the timber cut and removed by the Buyer from the Sellers' lands each year the Buyer shall pay the Sellers, as and for stumpage, whichever of the following two amounts is the greater: (i) Seven Dollars and Fifty Cents ($7.50) per one thousand board feet Columbia River Log Scale of the timber cut and removed during said year; or (ii) the then average market value of the timber cut and removed during said year. Said average market value shall be determined for each year according to the method hereinafter provided, which method hereby is adopted and accepted by the parties as being a fair and reasonable method by which to measure such average market value.

"(b) The average market value each year of the timber cut and removed by the Buyer from the Sellers' lands as aforesaid shall be sixty percentum (60%) of the sum of the following two items:

"(i) The balance remaining of the total amount of the Buyer's lumber sales for said year after deducting therefrom the total amount for said year of:

"(A) Buyer's profit from operation of retail lumber yard (but not including any profit on any wholesale sales or transfers of lumber from timber cut from Sellers' lands, whether or not to said retail lumber yard);

"(B) Buyer's gross logging and sawmill costs, expenses, and overhead (including, but not limited to, reasonable depreciation and five per centum (5%) on Buyer's paid-in capital and invested surplus), but said logging and sawmill costs shall be reduced by any amount received by the Buyer from the sale of power, hog fuel and mill by-products; and,

"(C) Buyer's profit on lumber sales from logs and timber obtained other than under this Agreement.

"(ii) The total amount of the Buyer's sales in said year of poles, piling, peeler logs, and other logs sold by the Buyer from the timber cut and removed from Sellers' lands."

Appendix D

"Giustina Bros.

"Eugene, Oregon

"October 4, 1948

"Giustina Bros. Lumber Co.

"Eugene,
Oregon

"Gentlemen:

"According to the recent conversations we have had with you, under the timber-cutting contract of July 1, 1948, our partnership will provide the Rainbow Creek timber which we bid in from the Forest Service (A6fs–16783) on March 4, 1948. By cutting and removing the

timber, you will act in effect as our agent, and you will be responsible to us for strict compliance with the terms of the Forest Service timber sale agreement.

"Yours very truly,
"Giustina Bros.
"By (s) Erminio Giustina
        "Partner
"By (s) Anselmo Giustina
        "Partner"